## CASE NO. 23-13119-H

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE ELEVENTH CIRCUIT

---

CITY OF DAYTONA BEACH, FLA.,

    *Appellant/Defendant*,

-vs-

DENNIS SCOTT, CHAD DRIGGERS,
DOUGLAS WILLIS, and
GEORGE ROWLAND,

    *Appellees/Plaintiffs*.

---

## __APPELLANT'S MOTION FOR INJUNCTION__
## __PENDING APPEAL__

---

Michael H. Kahn, Esquire
MICHAEL KAHN, P.A.
Florida Bar No.: 0241921
482 N. Harbor City Blvd.
Melbourne, FL 32935
(321) 242-2564
Michael@michaelkahnpa.com

*Attorney for Appellant*

---

IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

City of Daytona Beach, Fla. v. Scott, et al.          Case No**.** 23-13119-H

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

11th Cir. R. 26.1 requires that a Certificate of Interested Persons and Corporate Disclosure Statement be included with each brief, petition, answer, motion or response filed by any party.

Listed below are the trial judge and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case:

1.      Berger, Hon. Wendy W., *US. District Judge*

2.      City of Daytona Beach, Fla., *Defendant / Appellant*

3.      Clarke, Kristen, *Assistant Attorney General, United States Department of Justice, Special Litigation Section, Civil Rights Division*

4.      Driggers, Chad, *Plaintiff / Appellee*

5.      Dunn, Chelsea, *Attorney for Plaintiffs / Appellees*

6.      Gross, Benjamin, *City Attorney for Appellant City of Daytona Beach, Fla.*

7.      Johnston, Maureen, *Acting Deputy Chief, United States Department of Justice, Special Litigation Section, Civil Rights Division*

C1- of 2

8.    Kahn, Michael, *Attorney for Defendant / Appellant*

9.    Marshall, Daniel, *Attorney for Plaintiffs / Appellees*

10.   Michael Kahn, P.A., *Attorney for Defendant / Appellant*

11.   Neelakanta, Sabarish P., *Attorney for Plaintiffs / Appellees*

12.   Norway, Hon. Robert M., *Magistrate Judge*

13.   Rosenbaum, Steven H., *Section Chief, United States Department of Justice, Special Litigation Section, Civil Rights Division*

14.   Rowland, George, *Plaintiff / Appellee*

15.   Scott, Dennis, *Plaintiff / Appellee*

16.   Siegel, Jodi, *Attorney for Plaintiff s/ Appellees*

17.   Southern Legal Counsel, Inc., *Attorneys for Plaintiffs / Appellees*

18.   SPN Law LLC, *Attorney for Plaintiffs / Appellees*

19.   United States Department of Justice

20.   Van Erem, Haley, *Trial Attorney, United States Department of Justice, Special Litigation Section, Civil Rights Division*

21.   Willis, Douglas, *Plaintiff / Appellee*

No publicly traded company has an interest in the outcome of this case or appeal.

By:    /s/ Michael H. Kahn
Michael H. Kahn, Esquire
Florida Bar No.: 0241921
Counsel for Appellant / Defendant

# APPELLANT'S MOTION FOR INJUNCTION
# PENDING APPEAL

Defendant / Appellant, CITY OF DAYTONA BEACH, FLA., moves this Court to enjoin the Preliminary Injunction (Doc. 72) rendered by the District Court on August 29, 2023 pending resolution of the appeal.

## I.     Preliminary Statement Regarding Rule 8, Fed.R.App.P.

Appellant is fully cognizant of the requirement under Rule 8, <u>Fed.R.App.P.</u> that applications for stay be filed first in the District Court. Daytona Beach filed its Motion for Injunction Pending Appeal (Doc. 76) with the District Court on September 27, 2023. The Plaintiffs filed a Response in opposition (Doc. 79) on October 11, 2023. Daytona's motion has been on the District Court docket for a month and the issue has been fully briefed for two weeks.

For the reasons expressed in its District Court filing, and in this Motion, there is real urgency to the requested relief. In short, an ordinance intended to shield Daytona Beach residents from the immediate threat of accident and disease has been erroneously enjoined. Every day which goes by deprives the City of its ability to protect the health, safety and welfare of its residents and visitors.

Rule 8(a)(2)(A) provides that an appellant can seek relief in this Court when "the district court denied the motion or failed to afford the relief requested….".

1

While the District Court has not ruled on the merits of the Motion, its failure to make a timely determination, including but not limited to affording the relief requested, amounts to a denial of Appellant's substantive rights. Admittedly, it would certainly be unusual for the District Court to grant a stay allowing an ordinance to go into effect which the Court believes to be unconstitutional. *Cf.*, The Islay Company v. Kraft, Inc., 622 F.Supp 62, 63 (M.D. Fla. 1985) ("Having decided for Plaintiff on the facts and the law, I am obviously not disposed to find that the Defendant now enjoys a likelihood of success on the appeal.").

There is case authority to granting a motion for stay pending appeal in circumstances where the District Court had an opportunity to pass on that requested relief, but failed to do so. *See, e.g.*, McClendon v. City of Albuquerque, 79 F.3d 1014, 1020 (10th Cir. 1996) ("Although it is the court's strong preference that a stay be sought first in the district court, the rule admits of exceptions, and under the circumstances, it would serve little purpose to require another application to the district court."); Homans v. City of Albuquerque, 264 F.3d 1240, 1243 (10th Cir. 2001) ("We do so here because of the immediacy of the problem and the district court's legal error concerning the First Amendment."). This Court has often acknowledged that justice delayed is justice denied. *See, e.g.*, Hyde v. Irish, 962 F.3d

2

1306, 1309 (11th Cir. 2020).[1] Swift action is required on the City's application for an injunction.

## II.    **Facts and Course of Proceedings**.

In 2019, the City of Daytona Beach enacted §66-1 which regulated the times and locations where individuals can engage in "panhandling". *See*, Ex. "A" to Appendix and Doc. 20. As used in §66-1, "panhandling" is defined so as to include any solicitation seeking an immediate payment of money or something of value. *See*, §66-1(b).

Plaintiffs are persons who regularly engaged in panhandling in Daytona Beach and rely on that income for their living. (Doc. 35 at 1 [Amended Complaint attached as Ex. "B" of the Appendix]; Doc. 39-1; 39-2; 39-3; 39-4; 39-5; 39-6; 39-7). The Plaintiffs allege that they are or have been homeless. The subject panhandling ordinance does not mention homelessness or regulate the experience of being homeless in any way. (Id.; Ex. "A").

On November 28, 2022, Plaintiffs filed suit claiming that §66-1 is a content-based law which violated their First Amendment right of expression facially and as-applied to them. (Doc. 1). Shortly, thereafter the Plaintiffs moved for a preliminary

---

[1] The phrase is generally attributed to William E. Gladstone. *See*, Snow Covered Capital, LLC v. Fonfa, 2023 WL 205774 at *2 (D. Nev. Jan. 17, 2023).

injunction. (Doc. 8). The Court took no action on the injunction request. Instead, the Court dismissed the Complaint *sua sponte* as a shotgun pleading. (Doc. 34). Plaintiffs filed their Amended Complaint on February 10, 2023 (Doc. 35 [Attached as Ex. "B" of the Appendix]) and renewed their request for an injunction. (Doc. 39 [Attached as Ex. "C" of the Appendix]). Plaintiffs requested oral argument on their motion. (Doc. 40).

Daytona Beach filed its Response to Plaintiffs' second motion for preliminary injunction on February 28, 2023 (Doc. 44 [Attached as Ex. "D" of the Appendix]). Daytona Beach asserted that its ordinance was content-neutral because its application did not turn on the speaker or his speech and all solicitations seeking immediate consideration were subject to its time, place and manner restrictions. Appellant showed that the law was subject to intermediate scrutiny and would survive that level of review because its restrictions did not substantially burden speech, had significant government interests, and were narrowly tailored. Daytona Beach argued in the alternative that §66-1 could survive strict scrutiny based on compelling government interests - prevention of disease and traffic accidents - and the concerted effort to ensure that Daytona Beach utilized the least restrictive means of regulation. Appellant submitted its entire legislative record together with Affidavits attesting to the key facts supporting the compelling government interests. (Doc. 20; Doc. 44-1, 44-2, 44-3, 44-4, 44-5, 44-6, 44-7, 44-8 [Declarations of

4

Bellanca, Clary, Harwick, Kozinski, Dr. Steven Miles, Pierelli, Ross, Thomas attached as Composite Ex. E of the Appendix]).

The District Court directed the parties to advise whether an evidentiary hearing was required on the Plaintiffs' Second Motion for Preliminary Injunction. (Doc. 41). The parties filed a joint notice in response. (Doc. 45). The Plaintiffs took the position that an evidentiary hearing was not required. Daytona Beach asserted that an evidentiary hearing was indispensable given the dispute as to the substantiality of the government's interests and the issue of narrow tailoring as well as the bitterly disputed facts. Appellant identified twelve factual categories which required development through live evidence. (Id; [Joint Notice attached as Ex. F. of the Appendix]). The parties subsequently engaged in extensive and, at times, contentious discovery, including a 13-hour Rule 30(b)(6) deposition. (Doc. 53, 57, 59, 61, 63, 68).

On August 29, 2023, the District Judge granted Plaintiffs' Second Motion for Preliminary Injunction and enjoined portions of §66-1 without conducting a hearing of any kind. (Doc. 72 [Attached as Ex. G of the Appendix]).

Daytona Beach filed a timely appeal. On September 27, 2023, Appellant filed its Motion to Stay Order on Motion for Preliminary Injunction Pending Appeal with the District Court. (Doc. 76 [Attached as Ex. H of the Appendix]). Appellees filed their Response on October 11, 2023. (Doc. 79 [Attached as Ex. I of the Appendix]).

The District Court has not yet ruled on Appellant's Motion.

Action on Daytona Beach's Motion is urgently needed. As noted above, the City's compelling interest in protecting its residents from accident and disease are thwarted each day the injunction order is in effect.

This case presents a case of first impression in this Circuit: whether an ordinance regulating solicitations is reviewed for content-neutrality under the standards announced in <u>Reed v. Town of Gilbert, Ariz.</u>, 576 U.S. 155 (2015) or whether those standards have been modified by the Supreme Court's more recent ruling in <u>City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC</u>, 142 S.Ct. 1464 (2022). The City of Daytona Beach maintains that <u>City of Austin</u> significantly modified the holding in <u>Reed</u> and that solicitation ordinances are to be evaluated under the body of case law which preceded <u>Reed</u>. (Doc. 44 at 2-3). The key language in <u>City of Austin</u> is as follows:

> Most relevant here, **the First Amendment allows for regulations of solicitation** - that is, speech "requesting or seeking to obtain something" or "[a]n attempt or effort to gain business." Black's Law Dictionary 1677 (11th ed. 2019). To identify whether speech entails solicitation, one must read or hear it first. Even so, the Court has reasoned that ***restrictions on solicitation are not content based*** and do not inherently present "the potential for becoming a means of suppressing a particular point of view," so long as they do not discriminate based on topic, subject matter, or viewpoint.

<u>Austin</u>, 142 S.Ct. at 1473. (Emphasis added); *See, also*, <u>Hines v. Pardue</u>, __ F.Supp.3d _, 2023 WL 5254673 at *19 (S.D. Tex. Aug. 15, 2023) ("[S]olicitation

restrictions represent content-neutral regulations, 'so long as they do not discriminate based on topic, subject matter, or viewpoint.'" (*quoting* <u>City of Austin</u>)).

## III.  <u>Argument</u>.

### A.  **The standard of review.**

Rule 8, <u>Fed.R.App.P</u>. authorizes this Court to stay an injunction pending an appeal:

(a)    Motion for Stay.

(1)    Initial Motion in the District Court. A party must ordinarily move first in the district court for the following relief:

(A)    a stay of the judgment or order of a district court pending appeal;
…

(2)    Motion in the Court of Appeals; Conditions on Relief. A motion for the relief mentioned in Rule 8(a)(1) may be made to the court of appeals or to one of its judges.

(A)    The motion must:

…

(ii)    state that, a motion having been made, the district court denied the motion **or failed to afford the relief requested** and state any reasons given by the district court for its action.  (Emphasis added)

Under Rule 8, this Court will consider four factors in making this determination:

7

Under the " 'traditional' standard for a stay," we "consider[ ] four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" (citations omitted).

League of Women Voters of Fla., Inc. v. Fla. Sec'y of State, 32 F.4th 1363, 1370 (11th Cir. 2022). In League of Women Voters this Court noted that there are circumstances where equitable considerations are so strong that the likelihood of success criterion is relaxed:

But of course, that "traditional" four-factor standard does not always apply. For example, in some circumstances - namely, "when the balance of equities ... weighs heavily in favor of granting the stay" - we relax the likely-to-succeed-on-the-merits requirement. Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986) (quotation marks omitted). In that scenario, the stay may be "granted upon a lesser showing of a 'substantial case on the merits.' " Id. (quoting Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. Unit A June 26, 1981)).

Id.

Appellant believes that it presents a compelling case for reversal of the District Court's decision.

## B.     The Trial Court Abused its Discretion in Refusing to Conduct an Evidentiary Hearing.

Daytona Beach points to serious error even before reaching the constitutional questions which are central to its injunction motion. The trial Court abused its discretion in refusing to conduct an evidentiary hearing in this matter despite Appellant's detailed request for a hearing and the bitterly contested and substantial

8

factual issues presented by the Appellant. (Doc. 45).  The Court reasoned that there was no reason to conduct a hearing because the City offered no good reasons for having one:

> Having reviewed the parties' submissions, the Court finds that Defendant has failed to state with sufficient particularity any material issue of fact or credibility determinations necessitating an evidentiary hearing.

(Doc. 72 at 6). That holding is egregiously erroneous. In fact, the City provided **a dozen categories of facts** which were in dispute and which would benefit from a hearing. Those ranged from the physical geography and demographics of where the Plaintiff's solicitations occur, to the manner in which the solicitations were conducted, to the alternative avenues of communication, to the particular evidence supporting the City's interests. (Doc. 45 at 4-6).

Plaintiffs submitted affidavits which contradicted many of these facts, including the substantiality of the City's claims that solicitations for the immediate donation of money are associated with the spread of disease and present serious risk of pedestrian accidents. (Doc. 39-1; 39-2; 39-3; 39-4; 39-5; 39-6; 39-7).

While District Judges have some discretion to decline to conduct an evidentiary hearing, that discretion is limited to circumstances where the facts are not "bitterly contested" as they were here and in All Care Nursing Serv., Inc.:

> Furthermore, the trial court abused its discretion in failing to hold an evidentiary hearing in this case. An evidentiary hearing is not always required before the issuance of a preliminary injunction. Baker v.

Buckeye Cellulose Corp., 856 F.2d at 169. Where the injunction turns on the resolution of bitterly disputed facts, however, an evidentiary hearing is normally required to decide credibility issues. Forts v. Ward, 566 F.2d 849, 851 (2d Cir. 1977); *see, also,* Commerce Park at DFW Freeport v. Mardian Construction Co., 729 F.2d 334, 341 (5th Cir. 1984). The extent to which a court is required to take oral testimony in a hearing on a motion for a preliminary injunction, and the extent to which it may rely upon affidavits reflect a tension between the need for speedy action and the desire for certainty and complete fairness. SEC v. Frank, 388 F.2d 486, 490 (2d Cir. 1968). In the case *sub judice,* the trial court granted the preliminary injunction based on the various conflicting affidavits and exhibits submitted by the parties and the abbreviated oral arguments of counsel. The conflicting affidavits placed in serious dispute issues central to appellees' claims. …

All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1538–39 (11th Cir. 1989); *See, also,* Florida Atl. Univ. Bd. of Trustees v. Parsont, 465 F.Supp. 3d 1279, 1288–89 (S.D. Fla. 2020) *quoting* McDonald's Corp. v. Robertson, 147 F.3d 1301, 1312 (11th Cir. 1998)  ("[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue,' district courts must hold an evidentiary hearing on the propriety of injunctive relief.").

Likewise, it is an abuse of discretion for a trial Judge to resolve conflicting issues of fact without holding a hearing to weigh those facts. *See*, CBS Broad., Inc. v. EchoStar Communications Corp., 265 F.3d 1193, 1207 n. 18 (11th Cir. 2001) ("Had the court held an evidentiary hearing, it would have been free to discount Hawkins' statements as uncredible. However, on the face of Hawkins' affidavits and the Networks' arguments, the court was not at liberty to make such a credibility

10

determination or inferential leap on this contested issue without the benefit of an evidentiary hearing.").

The failure to conduct an evidentiary hearing in this case was an abuse of discretion for multiple reasons:

1.    The City of Daytona Beach identified twelve categories of facts that were in dispute and which would require resolution at a hearing, including fundamental issues pertaining to standing.

2.    After the City identified contested facts, it submitted affidavits which supported its version of the facts and the inferences to be drawn from them. The Plaintiffs submitted their own affidavits which contradicted Daytona Beach's position. When faced with conflicting affidavits on key factual points, the District Court is precluded from resolving those disputes without conducting an evidentiary hearing.

3.    Issues of credibility are at play – particularly Daytona Beach's medical expert's assessment that the risk of disease from the open defecation which often accompanies panhandling is dramatically increased when there is a personal exchange of money – the very target of this law.

4.    The parties have engaged in extensive discovery which has also included hearings, contentious depositions and rulings on their respective motions for protective orders. (Doc. 53, 57, 59, 61, 63, 68). At a minimum, the intensive

discovery should have alerted the District Judge to the reality that many key facts in this case were hotly contested.

5.    This case presents a constitutional question of first impression: are solicitation ordinances governed by the strict facial analysis adopted by <u>Reed</u> or has the <u>Reed</u> standard been significantly modified by <u>City of Austin</u> – as the City contends? The trial Court entered its injunction without the benefit of oral argument on this crucial constitutional question.

6.    The City of Daytona Beach has identified at least two instances where the District Court simply misconstrued the solicitation Ordinance: first in finding that the Ordinance only regulated charitable solicitations; and second in finding that the supposedly undefined term "panhandling" justified extensive statutory construction. Had the trial Judge conducted a hearing and considered argument on these issues, those errors may have been avoided.

### C.    Section 66-1 is not Content-Based; Intermediate Scrutiny Applies.

The trial Court abused its discretion in granting a preliminary injunction because it erred in determining that §66-1 discriminated on the basis of content. *See, generally*, <u>Curling v. Raffensperger</u>, 50 F.4th 1114, 1121 (11th Cir. 2022), *citing* <u>Gonzalez v. Governor of Georgia</u>, 978 F.3d 1266, 1270 (11th Cir. 2020) ("[A] court abuses its discretion in granting a preliminary injunction if, in determining whether success is likely, it incorrectly or unreasonably applies the law.").

In determining that Daytona Beach's solicitation Ordinance was content-based and subject to strict scrutiny, this Court applied Reed and rejected City of Austin:

> Much of Defendant's argument centers around its proposition that Austin overturned the effect of Reed on "solicitation laws" like the Ordinance at issue in this case. This Court disagrees. At issue in Reed was a sign code that subjected designated categories of signs, including ideological, political, and temporary, to different restrictions. Reed, 576 U.S. at 159–161. The Reed Court held the sign code to be content based because it "single[d] out specific subject matter for differential treatment, even if it [did] not target viewpoints within that subject matter." Id. at 169. Later, in Austin, the Court considered whether a law prohibiting off-site billboards but allowing on-site advertising was content based. Austin, 142 S. Ct. at 1469–70. … The Ordinance in this case is more analogous to the sign code at issue in Reed, in that a specific topic - requests for charity - is subject to different treatment than other messages.

(Doc. 72 at 10-11).

In its appeal, Daytona Beach intends to address a fundamental legal error made by the District Court. The trial Judge held that Daytona's solicitation Ordinance (§66-1) applies only to charitable solicitations:

> In this case, the Challenged Provisions are content based because they apply exclusively to solicitations or requests for charitable donations. Stated differently, under the Challenged Provisions, individuals are only prohibited from asking for charitable donations while permitted to solicit regarding any other topic.
> …
> Contrary to Defendant's arguments, this is not a case where the government regulates all types of solicitation, without regard to topic, subject matter, or viewpoint.

13

(Doc. 72 at 9).

It is not clear how the Court could have possibly reached such a conclusion given the plain language of the Ordinance which clearly defines solicitations so that it reaches *every* conceivable instance where an immediate donation is made in response to a request:

> *Panhandle* means to beg or make any demand or request made in person for an immediate donation of money or some other article of value from another person for the use of one's self or others, including but not limited to for a charitable or sponsor purpose or that will benefit a charitable organization or sponsor. As used in this article, the word "solicit" and its forms are included in this definition.

That all-inclusive definition was specifically written so that there would be no exceptions; all instances where an immediate solicitation for money are included, regardless of content, viewpoint or the identity of the speaker.[2]

The requested donation certainly could be for charitable purposes. However, it could also be for political or religious purposes or to support some social cause. Daytona Beach briefed this point repeatedly, intensely and as clearly as possible:

> A politician or clergyman who solicits a direct donation or contribution will be prosecuted under the Ordinance to the same extent as a

---

[2]   The fact that the Ordinance regulates only where there is an exchange of money or other thing of value does not transform the Ordinance into a content-based law. *See*, StreetMediaGroup, LLC v. Stockinger, 79 F.4th 1243, 1250–51 (10th Cir. Aug. 22, 2023) (Sign law which required billboard owners to obtain a permit for displaying paid messages but not for messages for which payment was not received was not content-based).

> panhandler – not because of their political or religious speech, but
> because they solicited incident to that speech.

(Doc. 44 at 15).

> If a politician or an evangelist engages in solicitation, that individual
> will be subject to the Ordinance to the same extent as someone seeking
> alms. The Ordinance regulates the act of solicitation; not the content of
> the communication.

(Doc. 44 at 19).

It appears that the trial Court went astray during an ill-advised attempt to
construe statutory language which was clear and unambiguous on its face.[3] In fact,
it is possible to identify the precise logical gap in the Court's analysis. The trial Court
apparently understood that the defined term "panhandle" is a term of art which
includes a number of concepts within it scope, including both "solicitation" and what
might be termed "begging". (Doc. 72 at 10: "A plain reading of this definition
demonstrates that, under the Ordinance, "solicit" is treated as a subset of
panhandling…"). The Court then made a misstep, concluding that the law does not
apply "to all types of solicitations as Defendant argues." (Id.).

That is true to a point: the Ordinance includes every type of "panhandling"
but does not refer to every type of "soliciting". But that is not because the Ordinance

---

[3]   The City will also argue on appeal that there was no cause to construe the
Ordinance because it was plain and unambiguous. *See*, <u>Fuerst v. Hous. Auth. of City
of Atlanta, Georgia</u>, 38 F.4th 860, 869 (11th Cir. 2022) ("[W]hen the statute's
language is plain, the sole function of the courts ... is to enforce it according to its
terms." (citation omitted)).

does not apply to all types of soliciting; it does. The reason why solicitation is not the term used is simply because it is a subcategory of the larger concept defined as "panhandling" as the Court observed in the preceding sentence.

The Court then makes an illogical leap which is not grounded in the language of the Ordinance or even a sensible extrapolation of that language:

> [W]hen reading the Ordinance as a whole, it is clear it applies only to charitable solicitations.

(Id.). Where does that idea come from? The Order does not identify any other part of the Ordinance which must be read *in pari materia*. There is no suggestion that one part of the law conflicts with another or that a definition is incomplete so that reference must be made to some other part of the Ordinance. The Order does not find that the term "panhandle" is vague or cannot be understood to also include the term "solicit" – which it does explicitly. *See*, § 66-1(b)(3) ("Soliciting is included in this definition of panhandling."). In short, the term "panhandle" is fully defined, internally consistent and does not have to be read in conjunction with "the Ordinance as a whole" or any portion of the Ordinance other than itself. The Court makes another blatant error when it opines that the subject ordinance does not define panhandling (Doc. 72 at 10).

In its effort to construe an Ordinance which did not need any construction, the District Court was mistaken in its observation that "[t]he Ordinance does not provide definitions for begging and soliciting". (Doc. 72 at 1, n. 1). The Court then consulted

16

Black's Law Dictionary for a common definition of the term "solicitation". (Id.).

The Court's effort was unnecessary. The Eleventh Circuit has long since observed that "soliciting," "begging," and "panhandling" are interchangeable terms". *See*, Smith v. City of Fort Lauderdale, Fla., 177 F.3d 954, 955 (11th Cir. 1999). In this context, "soliciting" and "begging" are simply swept up into the all-inclusive definition of "panhandling".

In short, the trial Court attempted to construe an ordinance which was not in any need of interpretation to reach a result which is utterly unsupportable given the plain text of the law. The law was not intended to be content-based and it is not content-based.

Under City of Austin, a solicitation law which is content-neutral on its face is subject to intermediate scrutiny, not strict scrutiny. *See*, Reagan Nat'l Advert. of Austin, Inc. v. City of Austin, 64 F.4th 287, 293 (5th Cir. 2023) (Following remand from the Supreme Court, the Fifth Circuit concluded that "we apply intermediate scrutiny, meaning that the Sign Code's 'restriction on speech or expression must be 'narrowly tailored to serve a significant governmental interest'" (*citing* City of Austin at 1475-76)); *See, also*, StreetMediaGroup, LLC v. Stockinger, 79 F.4th 1243, 1252 (10th Cir. 2023) ("Because the Act and rules are content neutral under Supreme Court precedent, we review under the intermediate scrutiny standard of review."); Smith v. City of Fort Lauderdale, Fla., 177 F.3d 954, 956 (11th Cir. 1999)

17

(Upholding a ban on solicitations on the City's beaches under intermediate scrutiny).

When read in accordance with its plain language, it is clear that the Ordinance regulates *all* attempts to solicit an immediate donation of money (or other item of value) without regard to content or viewpoint. That being the case, the Ordinance should have been construed under the <u>City of Austin</u> standard, which provides for intermediate scrutiny. *See*, <u>Austin</u>, 142 S.Ct. at 1473 ("[T]he First Amendment allows for regulations of solicitation… To identify whether speech entails solicitation, one must read or hear it first. Even so, the Court has reasoned that restrictions on solicitation are not content based.").

### D.    <u>The Daytona Beach Panhandling Ordinance Survives Intermediate Scrutiny</u>

In its preliminary injunction Order, the trial Court did not address intermediate scrutiny at all. That was error. Section 66-1 clearly survives intermediate scrutiny.

The Ordinance contains numerous predicate clauses which set forth interests which have been deemed significant and important by cases applying intermediate scrutiny. The legislative record, consisting of four hearings, totaling over 10 hours, with 24 witnesses, is replete with supportive evidence of those significant and important government interests which satisfy intermediate review. (Doc. 20). The Defendant has provided the Court with sworn statements regarding the effects of panhandling on Daytona Beach all of which reflect substantial (<u>as well as some</u> <u>compelling</u>) government interests in regulating solicitations through the means

18

adopted in §66-1. (Composite Ex. E to Appendix).

Daytona Beach also ensured that sufficient alternative avenues of communication were available to solicitors, amounting to more than 95% of the City's geographic area. (Doc. 44-2 at 2-3). The burden on speech is slight. Plaintiffs can either move a few feet to a lawful location to solicit money or they can engage in advocacy anywhere so long as they do not seek an immediate donation of money.

### E.   The Daytona Beach Panhandling Ordinance Survives Strict Scrutiny

The trial Court erred when it applied strict scrutiny to §66-1 rather than intermediate scrutiny. But even if strict scrutiny applies, that is not the end of the story. Daytona Beach intentionally created a legislative record which demonstrated both the compelling government interest in regulating panhandlers and the fact that the least restrictive means of regulation was selected. The effort to survive even strict scrutiny appears to be unique among reported cases as local governments have generally conceded that their regulations cannot meet that standard.

Here, Daytona Beach introduced expert testimony from a knowledgeable physician about the link between panhandling, open defecation and urination and the spread of diseases which can cause severe disease and death (Doc. 44-5; *See, also*, Composite Ex. E in Appendix). The trial Court provisionally accepted the fact that Daytona had identified a compelling interest, but faulted the City for failing to demonstrate narrow tailoring:

19

> Assuming these constitute compelling government interests, Defendant has made no argument as to how the Challenged Provisions are narrowly tailored to further those interests. Defendant's blanket assertion that "the Ordinance sets forth, and the evidence in the enactment record proves, compelling state interests that satisfy strict scrutiny," (Doc. 44 at 17), is woefully insufficient, and it is not the Court's obligation to speculate or make arguments on behalf of Defendant. Even so, the Court agrees with Plaintiff that the Challenged Provisions are unlikely to survive strict scrutiny.

(Doc. 72 at 12).

This statement gives short shrift to the briefing and record evidence on this very issue. (Doc. 44 at 16-17; Doc. 44-2; Doc. 44-8 at 6-7). The District Court's misapprehension of the record evidence again shows why the Court would have benefited from an evidentiary presentation. *Cf.*, Ranch House, Inc. v. Amerson, 238 F.3d 1273, 1284 (11th Cir. 2001) ("We therefore remand this case to afford the Defendants… an opportunity to develop a foundation for their claim that the statute's purpose was to combat secondary effects"). The Appellant also identified another compelling state interest in support of the Ordinance which is the health, safety and welfare of the citizens and tourists of Daytona Beach imperiled by the dangerous methodology of the panhandlers.

## F.    Balance of Harms; the Public Interest would be Served by a Stay.

While preservation of First Amendment rights is of upmost importance in our democracy, §66-1 does not substantially interfere with Plaintiffs' right to speak, including the ability to panhandle. The City has shown that there were serious

procedural and legal deficiencies in the injunction Order. It cannot be denied that Daytona Beach has a substantial likelihood of success on appeal.

Even with the Ordinance in effect, Plaintiffs are free to panhandle through the vast land available for panhandling in the City and can engage in advocacy anywhere. In contrast, the present injunction Order severely constrains the City's ability to address government interests which this Court has suggested are substantial and may well be compelling. (Doc. 72 at 10-11). The City has demonstrated a link between unregulated panhandling and disease as well as concerns with traffic flow and pedestrian safety which are compelling government interests. If a stay of the injunction Order is not entered, the public interest will be irreparably harmed.

A stay of the injunction pending appeal will preserve the health and safety of the City's residents and guests without substantially impeding Plaintiffs' First Amendment rights. *Cf.*, New Georgia Project v. Raffensperger, 976 F.3d 1278, 1284 (11th Cir. 2020) ("Because Georgia's decades-old Election Day deadline for absentee ballots does not threaten voting rights, and is justified by a host of interests, we stay the district court's injunction of that deadline.").

WHEREFORE, Appellant, City of Daytona Beach, moves this Court to enter an injunction staying the preliminary injunction Order (Doc. 72) until the conclusion of the appeal, with no bond or with a minimal bond.

*Respectfully submitted,*

  /s/ Michael H. Kahn
Michael H. Kahn, Esquire
Florida Bar No.: 0241921
MICHAEL KAHN, P.A.
482 N. Harbor City Blvd.
Melbourne, FL 32935
(321) 242-2564
Lead Counsel for Defendant
The City of Daytona Beach, Florida
Michael@michaelkahnpa.com
Roma@michaelkahnpa.com
Assistant@michaelkahnpa.com

## CERTIFICATE OF COMPLIANCE WITH FRAP 32

I certify that this Motion complies with the type-volume limitation of Fed.R. App.P. 27(d)(2)(A) because this brief contains 5,138 words, as calculated by Word, excluding the parts of the Motion exempted by Fed.R.App.P. 32(f).

This Brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this Motion has been prepared in a proportionally spaced typeface using MS Word 2019 in Times New Roman 14 point font.

  /s/ Michael H. Kahn
Michael H. Kahn, Esquire
Florida Bar No.: 0241921

22

## CERTIFICATE OF SERVICE

I certify that on this date, I electronically filed this Motion with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

CHELSEA DUNN, Esquire
[Chelsea.Dunn@southernlegal.org]
JODI SIEGEL, Esquire
[Jodi.Siegel@southernlegal.org]
DANIEL MARSHALL, Esquire
[Dan.Marshall@southernlegal.org]
Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, Florida 32601-4113

SABARISH P. NEELAKANTA, Esquire
[Sab@spnlaw firm.com]
SPN Law, LLC
The Harvey Building
224 Datura Street, Suite 904
West Palm Beach, Florida 33401

This 1st day of November, 2023.

  /s/ Michael H. Kahn
Michael H. Kahn, Esquire
Florida Bar No.: 0241921