# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

DENNIS SCOTT, CHAD DRIGGERS,
DOUGLAS WILLIS, and
GEORGE ROWLAND

      Plaintiffs/Appellees,

v.                                   Appeal Case No.: 23-13119-H

CITY OF DAYTONA BEACH, FLA.,

      Defendant/Appellant.
_____/

# PLAINTIFFS'/APPELLEES' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT AND RESPONSE TO APPELLANT'S MOTION FOR INJUNCTION <u>PENDING APPEAL</u>

      Pursuant to Eleventh Circuit Court of Appeals Rule 26.1, Plaintiffs/Appellees certify that the following persons may have an interest in the outcome of this case:

1. Berger, Hon. Wendy W., *US. District Judge*

2. City of Daytona Beach, FLA., *Defendant/ Appellant*

3. Clarke, Kristen, *Assistant Attorney General, United States Department of Justice, Special Litigation Section, Civil Rights Division*

4. Driggers, Chad, *Plaintiff/Appellee*

5. Dunn, Chelsea, *Attorney for Plaintiffs/Appellees*

6. George, Paul, *Attorney for Plaintiffs/Appellees*

7.  Gross, Benjamin, *City Attorney for Appellant City of Daytona Beach, Fla.*

8.  Holland & Knight, P.C., *Attorneys for Plaintiffs/Appellees*

9.  Johnston, Maureen, *Acting Deputy Chief, United States Department of Justice, Special Litigation Section, Civil Rights Division*

10. Kahn, Michael, *Attorney for Defendant/Appellant*

11. Marshall, Daniel, *Attorney for Plaintiffs/Appellees*

12. Michael Kahn, P.A., *Attorney for Defendant/Appellant*

13. Neelakanta, Sabarish P., *Attorney for Plaintiffs/Appellees*

14. Norway, Hon. Robert M., *Magistrate Judge*

15. Rosenbaum, Steven H., *Section Chief, United States Department of Justice, Special Litigation Section, Civil Rights Division*

16. Rowland, George, *Plaintiff/Appellee*

17. Scott, Dennis, *Plaintiff/Appellee*

18. Siegel, Jodi, *Attorney for Plaintiffs/Appellees*

19. Southern Legal Counsel, Inc., *Attorneys for Plaintiffs/Appellees*

20. SPN Law LLC, *Attorney for Plaintiffs/Appellees*

21. United States Department of Justice

22. Van Erem, Haley, *Trial Attorney, United States Department of Justice, Special Litigation Section, Civil Rights Division*

23. Willis, Douglas, *Plaintiff/Appellee*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

There are no parent corporations or publicly traded corporations that have an interest in the outcome of this case.

### <u>PLAINTIFFS'/APPELLEES' RESPONSE TO APPELLANT'S MOTION FOR INJUNCTION PENDING APPEAL</u>

Defendant seeks the extraordinary remedy of a stay (11th ECF 14-1) of the District Court's Order granting a Preliminary Injunction (11th ECF 14-2, Ex. G). While Defendant first filed a motion for stay in the District Court (*Id.*, Ex. H), it has prematurely filed another motion in this Court without giving sufficient time for the District Court to rule and thus does not satisfy the requirements of Fed. R. App. P. 8(a)(2)(A)(ii). Defendant also fails to meet its burden on the merits to show a stay is warranted as it does not establish a likelihood of success on appeal as to any of the grounds on which it alleges the preliminary injunction order was in error.

## I.    <u>Application of Fed. R. App. P. 8(a)(2)(A)(ii)</u>

Ordinarily, motions for stays must first be made to the District Court. Fed. R. App. P. 8(a)(1)(A). Defendant filed a motion for a stay in the District Court on September 27, 2023 (11th ECF 14-2, Ex. H), and Plaintiffs responded on October 11, 2023 (*Id.*, Ex. I). Three weeks later, Defendant filed substantially the same motion in this Court. (11th ECF 14-1.) Motions for stays may be made in this Court after one was made in district court if "the district court denied the motion or failed to afford the relief requested" and must "state any reasons given by the district court

3

for its action." Fed. R. App. P. 8(a)(2)(A)(ii). Defendant claims that the District Court failed to afford the relief requested because it did not rule on Defendant's request within three weeks. (11th ECF 14-1, at 4-5.)[1]

The cases Defendant cites do not define "failure to afford relief" and certainly do not support the assertion that the passage of a few weeks without a decision amounts to such a failure. (*See* 11th ECF 14-1, at 5.) Instead, Defendant's cases address either the irrelevant issue of sanctions, *see Hyde v. Irish*, 962 F.3d 1306, 1309 (11th Cir. 2020), or whether circuit courts of appeal can excuse the requirement where no motion for a stay was presented to the lower court. *See McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) (requirement excused as district court's resolve against a stay "demonstrated by a briefing schedule and imminent hearing on civil contempt"); *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001) (requirement excused "because of the immediacy of the problem and the district court's legal error concerning the First Amendment"). Defendant cites no authority in support of its contention that a short delay "amounts to a denial of Appellant's substantive rights." (*See* 11th ECF 14-1, at 5.) In fact, this Circuit recently noted that even time pressed circumstances (like the elections proceeding in *Homans*) do not ordinarily excuse a party from the need to first file in

---

[1] Plaintiffs' page cites are to the page numbers from the Eleventh Circuit file stamp, and not the Defendant's page numbers at the bottom of the page.

4

the district court. *People First of Ala. v. Sec'y of State for Ala.*, 815 F. App'x 505, 509 n.6 (11th Cir. 2020).

Defendant suggests that there is "real urgency" for a stay because of the threat of accident and disease but offers no specific facts to support its assertion. (11th ECF 14-1, at 4.) This broad declaration does not justify Defendant's request that this Court rule without allowing sufficient time for the District Court to first consider the pending motion to stay. Moreover, Defendant's assertion goes to the heart of the merits on which the District Court properly found that Plaintiffs have a likelihood of success. *See infra*, § IV. A stay is not warranted.

## II.    <u>Factors Considered for Entry of a Stay</u>

In determining whether to grant such a stay, the following four factors are examined: (1) whether the Defendant made a strong showing that they are likely to prevail; (2) whether the Defendant will be irreparably injured if a stay is not granted; (3) whether granting the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022). For this Court to find that "the movant demonstrates a probable likelihood of success on the merits on appeal requires that we determine that the trial court below was clearly erroneous." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

The Court *may* grant a stay "upon a lesser showing of a 'substantial case on the merits' when 'the balance of the equities (identified in factors 2, 3, and 4) weighs heavily in favor of granting the stay.'" *Id.* Nevertheless, a stay is "an exercise of judicial discretion"; it is never a "matter of right." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotations & citation omitted). Defendant bears the burden of showing that the circumstances justify an exercise of that discretion; failure to show any of the four factors is fatal to a request for a stay. *See Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021). Importantly, when "[c]onsidering that this [traditional] test is so similar to that applied when considering a preliminary injunction, courts rarely stay a preliminary injunction pending appeal." *Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1186 (N.D. Fla. Aug. 18, 2022). Defendant fails to meet its burden to show all four required factors, and thus its request for a stay should be denied.

## III.   District Court Properly Determined an Evidentiary Hearing Was Not Required

Defendant argues that the District Court abused its discretion when it granted the preliminary injunction without first holding an evidentiary hearing. (11th ECF 14-1, at 11-15.) "An evidentiary hearing is not always required before the issuance of a preliminary injunction." *All Care Nursing Service, Inc. v. Bethesda Memorial Hosp., Inc.,* 887 F.2d 1535, 1538 (11th Cir. 1989). "[W]here material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction

sought, district courts generally need not hold an evidentiary hearing." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998); *see also United States v. Lopez*, 466 Fed. App'x 829, 831-32 (11th Cir. 2012).

Defendant acknowledges that courts have discretion as to when to hold an evidentiary hearing on motions for preliminary injunctions. (11th ECF 14-1, at 12.) Despite that, Defendant offers twelve categories of fact that it claims warranted a hearing. (11th ECF 14-2, at 215-16). However, the facts that Defendant claims necessitated an evidentiary hearing were either not in dispute, not material to the issue at hand, or both.[2] Plaintiffs' motion did not involve circumstances that would require a hearing; there were no "bitterly contested" facts, nor did the District Court need to make credibility determinations. *See McDonald's Corp.*, 147 F.3d at 1311-12 (discussing the circumstances under which an evidentiary hearing is necessary before ruling on a motion for preliminary injunction). The District Court did not opine on the credibility of the Defendant's witnesses in its order. Nor did the Defendant point to any facts in the Plaintiffs' declarations which it claimed were false. *Even if every single fact in Defendant's proffered affidavits were true*, it would

---

[2] One of the areas Defendant asserted required an evidentiary hearing is standing to challenge the prohibitions on panhandling after dark and "aggressive" panhandling. (11th ECF 14-1, at 217 n.1.) As the District Court points out, Defendant did not raise this argument in its response to Plaintiffs' motion. (11th ECF 14-2, at 196 n.6.) Even if it had, Defendant does no more than conclusorily dispute Plaintiffs' sworn declarations that they panhandle after dark and that the challenged provisions chill their speech.

have had no effect on the Court's opinion. Accordingly, an evidentiary hearing on the Plaintiffs' Motion was not necessary.

Further, without legal support and with barely any analysis, Defendant also claims that the District Court abused its discretion in not granting oral argument. (11th ECF 14-1, at 15.) Courts have wide discretion whether to hold oral argument. *Silva v. Swift*, No. 4:19-cv-286-RH/MJF, 2020 WL 12178206, at *2 (N.D. Fla. April 28, 2020); *see also* Fed. R. Civ. P. 78(b). The District Court received briefings from the parties on the need for an evidentiary hearing (M.D. Fla. ECF 45) and its decision to rule without argument was certainly not an abuse of discretion.

## IV.   Defendant Fails to Make a Strong Showing That It Is Likely to Prevail

### A.    The Panhandling Ordinance Does Not Survive Strict Scrutiny

#### 1. The Ordinance is Content Based.

Defendant finds fault in the District Court's determination that § 66-1, Code of Ordinances, City of Daytona Beach, Florida (hereinafter, "Panhandling Ordinance" or "Ordinance") is content based, citing two primary arguments: (1) the Court misapplied *City of Austin v. Reagan Nat'l Advert. Of Austin, LLC*, 596 U.S. 61 (2022); and (2) the Court misapprehended the Ordinance's definition of "panhandling" in determining that it regulates only charitable solicitations. (11th ECF 14-1, at 9-10, 16-20.) Both of these contentions are without merit; the Panhandling Ordinance is content based.

8

The Ordinance singles out requests for donations, banning them in various locations throughout the City and when made under certain circumstances or at certain times of day. (11th ECF 14-2, at 26-27, § 66-1(c)(1)-(c)(4).) These bans apply *only* to those requesting donations. No other type of speech, such as seeking support for political, religious or social causes, is subject to the regulations; nor are solicitations for things other than donations. Thus, whether the Ordinance's criminal penalties apply depends entirely on the content of the message.

Speech restrictions are content based when they "single out any topic or subject matter for differential treatment." *See City of Austin*, 596 U.S. at 71. This is so *even if* the law does not favor one viewpoint over another. *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015) ("a speech regulation targeted at specific subject matter is content-based even if it does not discriminate among viewpoints within that subject matter"). Since *Reed*, courts have unanimously found that anti-panhandling ordinances were content based restrictions on speech. *Messina v. City of Ft. Lauderdale*, 546 F. Supp. 3d 1227, 1242-43 (S.D. Fla. 2021) (collecting cases).

The District Court did not, as Defendant argues, apply *Reed* and reject *Austin*. (*See* 11th ECF 14-1, at 16.) The District Court properly considered the impact of *Austin* on the content neutrality analysis set forth in *Reed*. (11th ECF 14-2, at 200-01.) What Defendant truly takes issue with is that the District Court did not accept its invitation to treat *Austin* as having overturned *Reed*'s impact on the review of

laws like the Ordinance. (*Id*. at 200.) In considering Defendant's arguments on this issue, the District Court aptly cites *Austin*'s explicit caution that it did not "'nullif[y]' *Reed's* protections" or "cast doubt on any of our precedents recognizing examples of topic or subject-matter discrimination as content based." (*Id.* at 201 (citing *City of Austin*, 596 U.S. at 76).)

Cases from other circuits confirm the District Court's reading that *Austin* did not overturn *Reed*. *See Int'l Outdoor, Inc. v. City of Troy, Mich.,* 77 F.4th 432, 436, n.1 (6th Cir. 2023) (applying *Reed* to determine that restrictions were content based after "supplemental briefing on what, if any, effect the recent Supreme Court decision" in *Austin* had)*; Project Veritas v. Schmidt,* 72 F.4th 1043, 1056 (9th Cir. 2023) (noting that *Austin* "did not affect the Court's longstanding holding that regulations that discriminate based on the topic discussed or the idea or message expressed ... are content based") (internal quotations & citations omitted); *Schrader v. Dist. Att'y of York Cnty.,* 74 F.4th 120, 127 (3d Cir. 2023) (applying *Austin* to hold that a law which "single[s] out [a] topic or subject matter for differential treatment" is content based) (internal quotations & citations omitted).

The District Court properly found that Defendant's Panhandling Ordinance was more like the ordinance at issue in *Reed* than the one at issue in *Austin*, in that it singles out only certain speech—verbal requests for donations—for differential treatment. (11th ECF 14-2, at 201.) The Ordinance does not, as Defendant contends,

regulate solicitation generally, regardless of whether its definition purports to do so. "Panhandle" is defined as "to beg or make any demand or request made in person for an immediate donation of money or some other article of value." (11th ECF 14-2, at 25, § 66-1(b)(3).) This definition explicitly demonstrates that the speech being restricted is not all solicitations, but merely those solicitations that are for donations. Put another way, the ordinance is triggered by the content of the solicitation: whether it includes a request for a donation of money or other article of value.[3]

Defendant's claim that the Ordinance is content neutral because it regulates all attempts to solicit an immediate donation of money, even if that donation is for political or religious purpose, (11th ECF 14-1, at 17), overlooks the fact that the Ordinance regulates only requests for donations and thus does discriminate based on content and topic. A law cannot remove an entire topic of speech from the marketplace of ideas any more than it can discriminate based on viewpoint. *See Reed,* 576 U.S. at 169. Like the ordinance at issue in *Reed*, the fact that the Panhandling Ordinance does not discriminate based on speaker (*see* 11th ECF 14-1, at 7, 17) does not render it content neutral. 576 U.S. at 170. Because "the regulations are triggered by the request for a donation of money or other item of value" (11th

---

[3] That this is the reach of the ordinance is made apparent by another clause in the definition: "Any purchase of an item for an amount far exceeding its value, under circumstances where a reasonable person would understand the purchase is in substance as donation, constitutes donation as contemplated in this definition." (*see* (11th ECF 14-2, at 25, § 66-1(b)(3).) Clearly, only donations are being restricted.

ECF 14-2, at 212), the Ordinance's application does depend on what a person says. *See City of Austin*, 596 U.S. at 74 ("a regulation of speech cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result"); *see also Loper v. N.Y.C. Police Dep't,* 999 F.2d 699, 704 (2d Cir. 1993) ("Even without particularized speech, however, the presence of an unkempt and disheveled person holding out his or her hand or a cup to receive a donation itself conveys a message of need for support and assistance.").

Defendant's argument that the Ordinance's definition of "panhandling" includes "all instances where an immediate solicitation for money" occurs is unconvincing. (*See* 11th Cir. 14-1, at 17.) What the ordinance regulates is not any solicitation for money, but any solicitation for a donation of money.[4] As the District Court rightly noted (11th ECF 14-2, at 199-200), the City's definition of "panhandling" does not include all types of solicitation; it doesn't include solicitations for the sale of goods or services, or solicitations for things that do not have monetary value, such as signatures on a petition, attendance at church, a vote

---

[4] The Defendant cites to a footnote in *Smith v. City of Ft. Lauderdale*, 177 F.3d 954, 955 n.1 (11th Cir. 1999) to claim that "solicitation," "begging," and "panhandling" are interchangeable terms. (11th ECF 14-1, at 20.) However, the cases cited in *Smith* make evident that the only type of "solicitation" being considered was charitable solicitation. And even if these terms are synonymous, the Ordinance is clear that only solicitations seeking donations are regulated (11th ECF 14-2, at 25, § 66-1(b)(3)).

for a political candidate, or solicitations for donations that are not immediate.[5] (*See* 11th ECF 14-2, at 25, § 66-1(b)(3).) *See also Messina*, 546 F. Supp. 3d at 1240-41. Accordingly, Defendant's argument that the Ordinance is content neutral is incorrect, and not likely to prevail.

### 2. Even if facially content neutral, the Ordinance is content based because of the City's intent.

Even if this Court were to find that Defendant has a likelihood of prevailing on its argument that the Ordinance is facially content neutral, it should still be reviewed under strict scrutiny. Some laws, "though facially content neutral, will be considered content-based regulations of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Reed*, 576 U.S. at 164 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Where "there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction, for instance, that restriction may be content based" and thus subject to strict scrutiny. *City of Austin*, 596 U.S. at 76.

The Ordinance is just such a law. The voluminous record Defendant provides as justification for the Ordinance focuses on only a certain type of speech— "panhandling and begging"—and those who participate in that speech—

---

[5] Under the plain language of the Ordinance, the Plaintiffs could hold a sign requesting donations five minutes in the future and not run afoul of the law.

"panhandlers and beggars." (*See generally* 11th ECF 14-2, at 17-23.) "The [City Commission] designed [the Ordinance] to target those speakers and their messages for disfavored treatment. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011). Measures passed solely to target a particular type of speech or speaker, though facially content neutral, are unconstitutional. *Id.* at 566 ("A government bent on frustrating an impending demonstration might pass a law demanding two years' notice before the issuance of parade permits. Even if the hypothetical measure on its face appeared neutral as to content and speaker, its purpose to suppress speech and its unjustified burdens on expression would render it unconstitutional."). The "absence of a neutral justification" for a restriction on speech "prevents the city from defending [that restriction] as content neutral." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429-30 (1993). The legislative history used to justify the Ordinance lays bare its true goal: to remove disfavored speakers and their speech from the City. (*See, e.g.,* 11th ECF 14-2, at 22 (justifying the Ordinance's speech restrictions due to the troublesome "presence of panhandlers and beggars" and "habits attributable to panhandlers").) Accordingly, the Ordinance must be subjected to strict scrutiny even if deemed facially content neutral.

### 3. The Ordinance is not narrowly tailored to a compelling state interest.

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the

government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. The District Court correctly found that the Ordinance is not narrowly tailored. (11th ECF 14-2, at 202-03.) Despite the District Court's admonishment that Defendant's assertion of narrow tailoring is "woefully insufficient" (11th ECF 14-2, at 202), Defendant again fails to articulate how the Ordinance is narrowly tailored to its proffered interests, and instead offers mere conclusory statements that it survives strict scrutiny. (11th ECF 14-1, 21-23; *see also* 11th ECF 14-2, at 224-26.)

Even assuming, as the District Court did, that some of Defendants' proffered interests are compelling, the Ordinance cannot survive strict scrutiny because it is not narrowly tailored to any of these interests. For example, two interests set forth by the Ordinance include (1) health issues caused by "panhandlers including but not limited to open urination and open defecation," and (2) concerns about safe deployment of fire and police vehicles. (11th ECF 14-2, at 18, 21.) Yet, the Ordinance restricts requests for donations but does not make it an offense to openly urinate or defecate or prohibit impeding emergency vehicles. Thus, Ordinance is not narrowly tailored to the purported health and safety interests because it does not address those interests in a direct and material way.

Laws that "burden substantially more speech than is necessary to further the government's legitimate interests" are fatally over-inclusive and are therefore not

narrowly tailored. *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (internal quotations & citations omitted). Laws may also fail the narrow tailoring requirement when they are under-inclusive, in that they single out a certain type of speech but do not regulate others that are equally problematic. *See Reed*, 576 U.S. at 172; *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 801-02 (2011) (law restricting the sale of violent video games to minors was "wildly underinclusive" because the state "declined to restrict" other forms of media that could be equally dangerous to children, and this alone caused the law to fail strict scrutiny). The Ordinance is not narrowly tailored because it is both over- and under-inclusive. It is over-inclusive because it sweeps up speech that does not implicate the interests that purportedly justify it, such as a person sitting quietly on the city Boardwalk holding a sign that reads "Please help." The Ordinance is also under-inclusive, because it ignores other forms of solicitation that would have the same impact as the prohibited speech, such as a person walking into traffic to solicit signatures for a petition.

Moreover, many of the harms that the Defendant recites can be addressed by less intrusive tools independent of the Ordinance, and the City offers no evidence that it has even considered, much less attempted, these tools to combat these harms. *McCullen*, 573 U.S. at 494-95; *see also McCraw v. City of Okla. City*, 973 F.3d 1057, 1075 (10th Cir. 2020) ("But the only way for the City to evaluate alternatives is to *consider* them—precisely the burden articulated in *McCullen*. Because the City

presents us with no evidence that it contemplated the relative efficacy or burden on speech of any alternatives, we conclude it has not met its burden.). Plaintiffs have pointed to a variety of other laws that could be enforced to prevent the harms allegedly associated with "panhandling" without burdening protected speech: state statutes prohibiting trespass, §§ 810.08 & 810.09, Fla. Stat., disorderly conduct and breach of the peace, § 877.03, Fla. Stat., assault and battery, §§ 784.011 & 784.03, Fla. Stat., requiring vehicles and pedestrians to yield to emergency vehicles, § 316.126 Fla. Stat.; or the City's own disorderly conduct, § 62-37, and battery ordinances. § 62-36, City Code." (11th ECF 14-2, at 240.) However, the City fails to demonstrate that it has attempted or even contemplated the efficacy of these alternatives.

In short, Defendant has not demonstrated that the Ordinance is narrowly tailored to a compelling state interest, and therefore it fails strict scrutiny.

### B.    The Ordinance Cannot Survive Even Intermediate Scrutiny.

Defendant attempts to find fault with the Order granting a preliminary injunction (11th ECF 14-2, Ex. G) by stating that the District Court did not address intermediate scrutiny. (11th ECF 14-1, at 21.) Of course, the Court did not need to address this level of scrutiny because it concluded that the Ordinance was content based. However, the Ordinance fails even if reviewed under intermediate scrutiny, which requires that the restrictions: (a) serve a significant government interest; (b)

are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication. *Ward,* 491 U.S. at 791. Defendant is unable to meet its burden to show that the Ordinance satisfies intermediate scrutiny, as it is not narrowly tailored to its asserted interests.

The narrow tailoring inquiry is a crucial part of intermediate scrutiny:

> The tailoring requirement does not simply guard against an impermissible desire to censor. The government may attempt to suppress speech not only because it disagrees with the message being expressed, but also for mere convenience. Where certain speech is associated with particular problems, silencing the speech is sometimes the path of least resistance. But by demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily "sacrific[ing] speech for efficiency."

*McCullen,* 573 U.S. at 486 (citing *Riley,* 487 U.S. at 795)). For a content neutral speech restriction to be narrowly tailored, Defendant must establish that the Ordinance actually advances its asserted interests. *Turner Broad. Sys., Inc. v. F.C.C.,* 512 U.S. 622, 664 (1994). Defendant must do more than simply posit the problems associated with the speech; it "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Id.* Defendant must further demonstrate that the restriction does not burden substantially more speech than necessary to further its interests, which requires a showing "that it seriously undertook to address the problem with less intrusive tools readily available to it" and "that it considered different methods that other jurisdictions have found effective." *McCullen*, 573 U.S. at 494.

Plaintiffs do not dispute that some (although not all) of the interests asserted by the City are significant, e.g., the health and safety of its residents. However, Defendant fails to argue how the Ordinance is narrowly tailored to those interests. Defendant offers "little evidence of non-speculative harms or interests that the Ordinance's restrictions alleviate in a direct and material way." *See Brewer v. City of Albuquerque*, 18 F.4th 1205, 1227 (10th Cir. 2021). The "problems to which the City's evidence *does* point are not likely to be ameliorated by the relevant subsections of the ordinance." *Id.* As detailed previously, *supra* § IV(A)(3), the Ordinance does not prohibit the harmful conduct that the City cites to justify it, and the City can prevent said conduct by simply enforcing other laws that do directly proscribe the harmful behaviors. However, Defendant has entirely failed to address whether it has considered or attempted to use readily available, less intrusive tools.

Defendant relies solely on the third prong of the intermediate scrutiny test, claiming that the Ordinance provides "sufficient alternative avenues of communication." (11th ECF 14-1, at 22.) As an initial matter, the Defendant's claim that the Ordinance is narrowly tailored because it leaves open alternative channels of speech improperly "conflates narrow tailoring analysis with an *alternative channels* analysis." *Brewer*, 18 F.4th at 1239; *see also Cutting v. City of Portland*, 802 F.3d 79, 88 (1st Cir. 2015) ("the fact that there are other places where plaintiffs

may engage in their expressive activity 'misses the point'" of the narrow tailoring inquiry" (quoting *McCullen*, 573 U.S. at 489)).

And even when considered on its merits, Defendant's argument about alternative channels is unconvincing. Defendant recites that more than 95% of the City is available for solicitation. (11th ECF 14-1, at 22.) Assuming *arguendo* for purposes of this response that the 97.5% is accurate (though Plaintiffs plan to disprove this at trial), Defendant offers no analysis of how much of that percentage offers sufficient opportunities for Plaintiffs to communicate their messages of need in a public forum. For example, a large percentage of City land is not public but rather private residential property that is unavailable for charitable solicitation due to trespass and other state laws. *See* §§ 70.002, 810.08, & 810.09, Fla. Stat. (2023). Also, much of that percentage includes areas, such as undeveloped forests, where there are few other people, and thus those "alternative channels" are not likely to reach the desired audience. *See City of Ladue v. Gilleo*, 512 U.S. 43, 56-57 (1994) ("[d]isplaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means"); *McCullen*, 573 U.S. at 488-90 (burdens on speech posed by abortion clinic buffer zone law were not addressed by assertions that plaintiffs could still chant slogans or display signs). Defendant's blanket assertion that there are alternative avenues of communication is insufficient.

Defendant has not demonstrated that the ordinance is narrowly tailored, or that there are sufficient alternative channels of communications, and so the Ordinance fails even intermediate scrutiny.

## V.    The Lesser Standard for a Stay Does Not Apply, But Even If It Did, Defendant Does Not Meet It

Because the Ordinance does not survive even intermediate scrutiny, Defendant cannot make the required strong showing that it will prevail on appeal to justify the entry of a stay. *See Nken v. Holder*, 556 U.S. at 434 (2009) ("It is not enough that the chance of success on the merits be better than negligible.") (internal quotations & citations omitted). Defendant has not demonstrated that the findings and order below were clearly erroneous.

Defendant claims instead that it need merely make a showing of a "substantial case on the merits." This lesser burden, however, is only appropriate when the balance of the equities in the three other factors—"2) that absent a stay the movant will suffer irreparable damage; 3) that the adverse party will suffer no substantial harm from the issuance of the stay; and 4) that the public interest will be served by issuing the stay"—weighs heavily in favor of a stay. *See Garcia-Mir*, 781 F.2d at 1453.

Defendant fails to demonstrate that the balance of equities weighs heavily in favor of a stay. "'There can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute[.]'" *KH Outdoor, LLC v. City*

*of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (quoting *Joelner v. Vill. of Washington Park, Ill.*, 378 F.3d 613, 620 (7th Cir. 2004)); *LaCroix v. Town of Ft. Myers Bch., Fla*., 38 F.4th 941, 954-55 (11th Cir. 2022) ("Ordinances that violate the First Amendment are 'per se irreparable injur[ies]'"). Moreover, a stay would once again subject Plaintiffs and other similarly situated individuals within the City limits to continuing harm by suppressing their First Amendment right to request charity under threat of future arrest, incarceration, and monetary penalties. *See Howard v. City of Jacksonville*, 109 F. Supp. 2d 1360, 1365 (M.D. Fla. 2000) ("In contrast, the Plaintiffs suffer to lose their First Amendment freedoms.")

And the public interest would not be served by a stay; indeed, "[t]he public has no interest in enforcing an unconstitutional" law. *KH Outdoor*, 458 F.3d at 1272. Defendant's arguments about harm to the public interest absent a stay, citing concerns of disease and public safety, are unavailing. To the extent there are concerns about public health or safety, Defendant has many tools at its disposal to address these harms that do not intrude on Plaintiffs' protected speech rights. *See supra* § IV(A)(3).

Thus, Defendant does not justify the application of this lower standard and must therefore make a strong showing that it is likely to succeed on the merits, a standard that it fails to meet. *See supra* § IV. Even under the lesser standard, though, Defendant does not show a "substantial case on the merits when a serious legal

question is involved." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). There is no serious legal question here. As noted above, the Court's application of *Austin* and *Reed* to determine that the Ordinance is content based is consistent with other Circuit decisions, *see supra* § IV(A)(1), and Defendant provides no basis to support a finding that the Ordinance is narrowly tailored to its proffered interests. *See supra* § IV(A)(3).

For the foregoing reasons, Defendant's Motion for Injunction Pending Appeal should be denied.

November 10, 2023          Respectfully submitted,

/s/ Chelsea Dunn
CHELSEA DUNN, Fla. Bar No. 1013541
Chelsea.dunn@southernlegal.org
JODI SIEGEL, Fla. Bar No. 511617
Jodi.siegel@southernlegal.org
DANIEL MARSHALL, Fla. Bar No. 617210
Dan.marshall@southernlegal.org
Southern Legal Counsel, Inc.
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)

ATTORNEYS FOR PLAINTIFFS/APPELLEES

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 5,191 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 14 font Times New Roman.

*/s/ Chelsea Dunn*
Attorneys for Plaintiffs/Appellants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail through the Court's CM/ECF system on all counsel or parties of record on November 10, 2023.

*/s/Chelsea Dunn*
ATTORNEYS FOR
PLAINTIFFS/APPELLEES