_____

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

DENNIS SCOTT, CHAD DRIGGERS,
DOUGLAS WILLIS, and GEORGE ROWLAND,
Plaintiffs/Appellees,

v.

CITY OF DAYTONA BEACH, FLORIDA,
Defendant/Appellant.

_____

**On Appeal from the United States District Court,
Middle District of Florida, Orlando Division
6:22-cv-2192-WWB-RMN**

_____

**PLAINTIFFS/APPELLEES' ANSWER BRIEF**

_____

**Chelsea Dunn,** Fla. Bar No. 1013541
Chelsea.Dunn@southernlegal.org
**Jodi Siegel,** Fla. Bar No. 511617
Jodi.Siegel@southernlegal.org
**Daniel Marshall,** Fla. Bar No. 617210
Dan.Marshall@southernlegal.org
**Southern Legal Counsel, Inc.**
1229 NW 12th Avenue
Gainesville, FL 32601-4113
(352) 271-8890

*Attorneys for Plaintiffs/Appellees*

*Dennis Scott, et al v. City of Daytona Beach, Florida*
Appeal Case No.: 23-13119-H

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Eleventh Circuit Court of Appeals Rule 26.1, Plaintiffs/Appellees

certify that the following persons may have an interest in the outcome of this case:

1. Berger, Hon. Wendy W., *U.S. District Judge*

2. City of Daytona Beach, Fla., *Defendant/Appellant*

3. Clarke, Kristen, *Assistant Attorney General, U.S. Department of Justice, Special Litigation Section, Civil Rights Division*

4. Driggers, Chad, *Plaintiff/Appellee*

5. Dunn, Chelsea, *Attorney for Plaintiffs/Appellees*

6. George, Paul, *former Attorney for Plaintiffs/Appellees*

7. Gross, Benjamin, *City Attorney for Appellant City of Daytona Beach*

8. Holland & Knight, P.C., *Attorneys for Plaintiffs/Appellees*

9. Johnston, Maureen, *Acting Deputy Chief, U.S. Department of Justice, Special Litigation Section, Civil Rights Division*

10. Kahn, Michael, *Attorney for Defendant/Appellant*

11. Marshall, Daniel, *Attorney for Plaintiffs/Appellees*

12. Michael Kahn, P.A., *Attorney for Defendant/Appellant*

13. Neelakanta, Sabarish P., *Attorney for Plaintiffs/Appellees*

14. Norway, Hon. Robert M., *U.S. District Court Magistrate Judge*

15. Ramos, Eduardo, *Attorney for Plaintiffs/Appellees*

16. Rosenbaum, Steven H., *Section Chief, U.S. Department of Justice, Special Litigation Section, Civil Rights Division*

17. Rowland, George, *Plaintiff/Appellee*

18. Scott, Dennis, *Plaintiff/Appellee*

19. Siegel, Jodi, *Attorney for Plaintiffs/Appellees*

20. Southern Legal Counsel, Inc., *Attorneys for Plaintiffs/Appellees*

21. SPN Law LLC, *Attorney for Plaintiffs/Appellees*

22. United States Department of Justice, *Statement of Interest*

23. Van Erem, Haley, *Trial Attorney, U.S. Department of Justice, Special Litigation Section, Civil Rights Division*

24. Willis, Douglas, *Plaintiff/Appellee*

## CORPORATE DISCLOSURE STATEMENT

There are no parent corporations or publicly traded corporations that have an interest in the outcome of this case.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs/Appellees do not believe oral argument is needed.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . C-1 of 2

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . C-2 of 2

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

      CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

      FEDERAL RULES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

      STATE STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

      CITY ORDINANCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

      OTHER AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF ADOPTION OF PART OF APPELLANT'S BRIEF . . . . . . . . x

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      I.    Course of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      II.   Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      III.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.   THE DISTRICT COURT CORRECTLY FOUND THAT THE
     CITY'S PANHANDLING ORDINANCE WAS A CONTENT-
     BASED SPEECH REGULATION. . . . . . . . . . . . . . . . . . . . . . . . . . 11

     A.   The Panhandling Ordinance only singles out and regulates
          requests for immediate donations. . . . . . . . . . . . . . . . . . . . . . 11

     B.   The District Court did not err in determining that, even in light
          of *Austin*, the Panhandling Ordinance is content-based. . . . . . 14

     C.   The District Court did not "misconstrue" the discriminatory
          nature of the Panhandling Ordinance. . . . . . . . . . . . . . . . . . . . 20

II.  EVEN IF DEEMED FACIALLY CONTENT-NEUTRAL, THE
     PANHANDLING ORDINANCE IS CONTENT-BASED
     BECAUSE IT TARGETS CERTAIN SPEAKERS AND THEIR
     MESSAGES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

III. THE DISTRICT COURT CORRECTLY HELD THAT THE CITY'S
     PANHANDLING ORDINANCE CANNOT SURVIVE EITHER
     STRICT OR INTERMEDIATE SCRUTINY. . . . . . . . . . . . . . . . . 27

     A.   The Panhandling Ordinance does not withstand strict scrutiny
          because it is not narrowly tailored to any compelling
          government interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

B.    The Panhandling Ordinance does not withstand intermediate scrutiny because it is not narrowly tailored to any significant government interest.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

IV.   THE DISTRICT COURT DID NOT ERR IN DETERMINING THAT THE IRREPARABLE HARM SUFFERED BY PLAINTIFFS AND THE BALANCE OF EQUITIES WEIGH IN FAVOR OF GRANTING A PRELIMINARY INJUNCTION.. . . . . . . . . . . . . . 40

A.    Plaintiffs will suffer irreparable injury absent the injunction. . 40

B.    Threatened injury to Plaintiffs outweighs any damage to the City. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

C.    A preliminary injunction is in the public interest. . . . . . . . . . 42

V.   THE DISTRICT COURT PROPERLY DETERMINED AN EVIDENTIARY HEARING WAS NOT NECESSARY. . . . . . . . . . 43

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

<u>**TABLE OF CITATIONS**</u>

**CASES**

*All Care Nursing Service, Inc. v. Bethesda Memorial Hosp., Inc.*,
    887 F.2d 1535 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d
    1177 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Baker v. City of Fort Worth*, 506 F. Supp. 3d 413 (N.D. Tex. 2020) . . . . . . . . . . . 15

*Billups v. City of Charleston*, 961 F.3d 673 (4th Cir. 2020) . . . . . . . . . . . . . . . . . 26

*Bischoff v. Fla.*, 242 F. Supp. 2d 1226 (M.D. Fla. 2003) . . . . . . . . . . . . . . . . . . . . 33

*Booher v. Marion Cnty.*, No. 5:07-cv-00282, 2007 WL 9684182
    (M.D. Fla. Sept. 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Brewer v. City of Albuquerque*, 18 F.4th 1205 (10th Cir. 2021) . . . . . . . . 35, 36, 38

*Brown v. Entm't Merchants Ass'n*, 564 U.S. 786 (2011) . . . . . . . . . . . . . . . . . . . . 29

*Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276 (D. Colo. 2015) . . . . . . 31

*Buehrle v. City of Key West*, 813 F.3d 973 (11th Cir. 2015) . . . . . . . . . . . . . . . . . 37

*Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*,
    No. 1:22-CV-01679, 2023 WL 2692400 (M.D. Pa. Mar. 29, 2023) . . . . . . 24

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) . . . . . . . . . . . . . . 17

*\*City of Austin v. Reagan National Adverising. of Austin, LLC*,
    596 U.S. 61 (2021) . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 12, 14-20, 22, 23, 25

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) . . . . . . . . . . . 26

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Cutting v. City of Portland*, 802 F.3d 79 (1st Cir. 2015) . . . . . . . . . . . . . . . . . . . . 38

*Elrod v. Burns*, 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*FF Cosmetics. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290
    (11th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 37, 38

*Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale*, 11 F.4th 1266
    (11th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

*GEFT Outdoor, LLC v. City of Westfield*, 39 F.4th 821 (7th Cir. 2022) . . . . . . . . 19

*Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . 15

*Henagan v. City of Lafayette*, No. 6:21-CV-03946, 2022 WL 4546721
    (W.D. La. Sept. 27, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010) . . . . . . . . . . . . . . . . . . . . . 17

*Howard v. City of Jacksonville*, 109 F. Supp. 2d 1360 (M.D. Fla. 2000). . . . . 41, 42

*Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*,
    470 F. Supp. 3d 888 (S.D. Ind. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Int'l Outdoor, Inc. v. City of Troy,* 77 F.4th 432 (6th Cir. 2023) . . . . . . . . . . . . . 19

*LaCroix v. Town of Ft. Myers Beach, Fla*., 38 F.4th 941 (11th Cir. 2022) . . . . . . 40

*Lebron v. Wilkins*, 820 F. Supp. 2d 1273 (11th Cir. 2013). . . . . . . . . . . . . . . . . . . 42

*Loper v. N.Y.C. Police Dep't,* 999 F.2d 699 (2d Cir. 1993) . . . . . . . . . . . . . . . . . 22

*Mazo v. New Jersey Secretary of State*, 54 F.4th 124 (3d Cir. 2022). . . . . . . . 17, 18

*Mazo v. Way*, 144 S. Ct. 76 (2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McCraw v. City of Okla. City*, 973 F.3d 1057 (10th Cir. 2020) . . . . . . . . . . . . . . 30

*McCullen v. Coakley*, 573 U.S. 464 (2014) . . . . . . . . . . . . . . 29, 30, 34, 35, 38, 39

*McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir. 1998) . . . . . . . . . . 43, 44

*Messina v. City of Fort Lauderdale*, 546 F. Supp. 3d 1227
    (S.D. Fla. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19, 22, 27, 28, 32

*Messina v. City of Ft. Lauderdale*, No. 21-cv-60168-ALTMAN/Hunt,
    2024 WL 301574 (S.D. Fla., Jan. 26, 2024) . . . . . . . . . . . . . . . . . . . . . . . . 36

*Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507
    (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*National Federation of the Blind of Texas Inc. v. City of Arlington*,
    No. 3:21-CV-2028-B, 2022 WL 4125094 (N.D. Tex. Sept. 9, 2022) . . . . . 23

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of
    Jacksonville*, 896 F.2d 1283 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 41

*Otto v. City of Boca Raton, Fla.*, 981 F.3d 854 (11th Cir. 2020) . . . . . . . . . . . . . 42

*Porter v. Martinez*, 68 F.4th 429 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Project Veritas v. Schmidt,* 72 F.4th 1043 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . 19

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) . . . . . . . . . 1, 12-22, 24, 25, 28, 29

*Revette v. International Association of Bridge Workers*, 740 F.2d 892
    (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Reynolds v. Middleton*, 779 F.3d 222 (4th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . 35

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 (1988) . . . . . . . . 24, 34

*Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . 12, 33

*Schrader v. Dist. Att'y of York Cnty.,* 74 F.4th 120 (3d Cir. 2023) . . . . . . . . . . . . 19

*Scott v. Roberts*, 612 F.3d 1279 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 40, 42

*Silva v. Swift*, No. 4:19-cv-286, 2020 WL 12178206
    (N.D. Fla. April 28, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Smith v. City of Fort Lauderdale*, 177 F.3d 954 (11th Cir. 1999) . . . . . . . . . . 15, 24

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) . . . . . . . . . . . . . . . . . . . . . . . . 25

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994) . . . . . . . . . . . . . . . . . . . 37

*U.S. v. Lopez*, 466 Fed. App'x 829 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 43

*U.S. v. Playboy Entm't Grp., Inc.,* 529 U.S. 803 (2000). . . . . . . . . . . . . . . . . . . . 28

*Univ. Books & Videos, Inc. v. Metro. Dade Cnty.*, 33 F. Supp. 2d 1364
    (S.D. Fla. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Vigue v. Shoar*, 494 F. Supp. 3d 1204 (M.D. Fla. 2020) . . . . . . . . . . . . . . . . . . . 32

*Vigue v. Shoar*, Case No. 3:19-CV-186-J-32, 2019 WL 1993551
    (M.D. Fla. May 6, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Vill. of Schaumburg v. Citizens for a Better Env't.*, 444 U.S. 620 (1980) . . . . 13, 23

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) . . . . . . . . . . . 15, 24, 29, 34, 37

*Williams-Yulee v. The Fla. Bar*, 575 U.S. 433 (2015) . . . . . . . . . . . . . . . . . . . 27, 29

**FEDERAL RULES**

Fed. R. App. P. 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Fed. R. Civ. P. 78(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

**STATE STATUTES**

§ 316.126, Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

§ 70.002, Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

§ 784.011, Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

§ 784.03, Fla. Stat . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

§ 810.08 Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 39

§ 810.09 Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 39

§ 877.03, Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**CITY ORDINANCES**

Art. II, Code of Ordinances, City of Daytona Beach, Florida . . . . . . . . . . . . . . . . 13

Art. V, Code of Ordinances, City of Daytona Beach, Florida . . . . . . . . . . . . . . . . 14

City of Daytona Beach Ordinance No. 19-27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 1-14, Code of Ordinances, City of Daytona Beach, Florida . . . . . . . . . . . . . . . 32

§ 62-36, Code of Ordinances, City of Daytona Beach, Florida . . . . . . . . . . . . . . 30

§ 62-37, Code of Ordinances, City of Daytona Beach, Florida . . . . . . . . . . . 30, 32

§ 66-1, Code of Ordinances, City of Daytona Beach, Florida . . . . . . . . . . . *passim*

**OTHER AUTHORITIES**

11th Cir. R. 26.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

11th Cir. R. 32-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## STATEMENT OF ADOPTION
## OF PART OF APPELLANT'S BRIEF

Plaintiffs/Appellees adopt the Defendant/Appellant's Course of the Proceedings (Initial Br., at 2-5), and then add a few additional points.

## STATEMENT OF THE ISSUES

I.     Whether the District Court properly applied both *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), and *City of Austin v. Reagan National Adverising. of Austin, LLC*, 596 U.S. 61 (2021), to determine that the City of Daytona Beach's Panhandling Ordinance is content-based.

II.    Whether the District Court correctly determined that the City of Daytona Beach's Panhandling Ordinance does not survive strict scrutiny.

III.    Whether the Panhandling Ordinance fails to survive intermediate scrutiny.

IV.    Whether the District Court properly used its discretion in determining that neither an evidentiary hearing nor oral argument on Plaintiffs' Motion for a Preliminary Injunction was necessary.

# STATEMENT OF THE CASE

## I. Course of Proceedings

Plaintiffs/Appellees adopt the Defendant/Appellant's Course of Proceedings, except to add that Appellees' position below was that an evidentiary hearing was not required because the facts that the Defendant/Appellant City of Daytona Beach claimed necessitated an evidentiary hearing were either not in dispute or were not material to the issues raised in the motion. (MD ECF 45, at 2.)

Further, Plaintiffs requested and were granted leave to file a reply to Defendant's Response to Plaintiffs' Second Motion for Preliminary Injunction. The reply argued that the Panhandling Ordinance failed even intermediate scrutiny and that the new governmental interests that were raised in the City's response do not justify the Ordinance. (MD ECF 49.)

Finally, an order from this Court was issued after the filing of the Initial Brief. On December 29, 2023, this Court denied the Defendant/Appellant's Motion for Injunction Pending Appeal. (11th Cir. Doc. 25.)

## II. Statement of the Facts

On February 6, 2019, the Daytona Beach City Commission adopted Ordinance No. 19-27, an ordinance regulating panhandling within the Daytona Beach city limits,[1]

---

[1] "Panhandle" is defined within the Ordinance as: "to beg or make any demand or request made in person for an immediate donation of money or some other article

codified at § 66-1 of the City Code (hereinafter "Panhandling Ordinance" or "Ordinance"). (MD ECF 1-3, at 1, 14.) The Ordinance prohibits panhandling in the following areas:

> (a) within twenty (20) feet of any entrance or exit of commercially zoned property, bus or trolley stops or any public transportation facility, ATMs, public parking lots and garages, parking meters, and public restrooms;
> (b) within one hundred feet of daycares and schools;
> (c) within one hundred and fifty feet of traffic intersections; and
> (d) on the city Boardwalk.

(MD ECF 1-3, at 11-12 § 66-1(c)(3).) The Ordinance also makes it unlawful to panhandle at:

> (a) any operating outdoor dining area, amphitheater seating area, playground, or outdoor merchandise area;
> (b) any transit stop, taxi stand, or in a public transit vehicle;
> (c) while the person being solicited is standing in line waiting to be admitted to a commercial establishment;
> (d) by touching the person being solicited without that person's consent;
> (e) by using profane or abusive language during the solicitation or following an unsuccessful solicitation;
> (f) by using any gesture or act intended to cause a reasonable person to be fearful or feel compelled to accede to the solicitation;

---

of value from another person for the use of one's self or others, including but not limited to for a charitable or sponsor purpose or that will benefit a charitable organization or sponsor. As used in this article, the word 'solicit' and its forms are included in this definition. Panhandling is considered as having taken place regardless of whether the person making the solicitation received any contribution. Any purchase of an item for an amount far exceeding its value, under circumstances where a reasonable person would understand that the purchase is in substance a donation, constitutes a donation as contemplated in this definition. Begging is included in this definition of panhandling. Soliciting is included in this definition of panhandling." (MD ECF 1-3, at 10 § 66-1(b)(3).)

(g) while under the influence of alcohol or an illegal controlled substance; or

(h) after dark.

(MD ECF 1-3, at 12 § 66-1(c)(4).) Additionally, the Ordinance prohibits "Aggressive Panhandling"[2] "on any sidewalk, highway, street, roadway, right-of-way, parking lot,

---

[2] Aggressive Panhandling is defined as:

(a) to approach or speak to a person and demand, request or beg for money or a donation of valuable property in such a manner as would cause a reasonable person to believe that the person is being threatened with imminent bodily injury or the commission of a criminal act upon the person approached or another person in the solicited person's company, or upon property in the person's immediate possession (for example, placing oneself within 2 feet of a solicited person and/or using abusive or profane language in a loud voice while demanding or requesting money); or

(b) To maintain contact with a solicited person and continue demanding, requesting or begging for money or a donation of valuable property after the solicited person has made a negative response to an initial demand or request for money or a donation (for example, walking in front of, next to, or behind a solicited person while continuing to demand, request or beg for money from that person after that person has refused to donate or give money); or

(c) To obstruct, block or impede, either individually or as part of a group of persons, the passage or free movement of a solicited person or a person in the company of a solicited person, including persons on foot, on bicycles, in wheelchairs or operating motor vehicles or persons attempting to enter or exit motor vehicles (for example, walking, standing, sitting, lying, or placing an object in such a manner as to block passage of another person or vehicle, or to require another person or driver of a vehicle to take evasive action to avoid physical contact); or

(d) To touch or cause physical contact to a solicited person or a person in the company of a solicited person, or to touch any vehicle occupied by a

park, or other public or semi-public area or in any public building lobby, entranceway, plaza or common area, public forum or limited public forum" (MD ECF 1-3, at 1, § 66-1(c)(1)), and further prohibits a person from approaching a driver or passenger of a motor vehicle for the purpose of panhandling, soliciting, or begging if done in an "aggressive manner." (MD ECF 1-3, at 12 § 66-1(c)(4)(a).)

Violation of the Ordinance is punishable by a jail sentence, not to exceed sixty days, or a fine, not to exceed $500.00, or both. (MD ECF 1-3, at 12-13 § 66-1(d); MD ECF 108-5.) The City immediately began enforcement of the Ordinance upon its enactment. (MD ECF 39-8, at 1.) At the time of filing the Amended Complaint, the Daytona Beach Police Department had made at least 246 arrests for violations of the Ordinance. *Id.*

Plaintiffs/Appellees Dennis Scott, Chad Driggers, Douglas Willis, and George Rowland were residents of the City of Daytona Beach experiencing poverty as of the filing of the complaint. (MD ECF 39-1, at 1 ¶¶ 1-4; MD ECF 39-2, at 1 ¶¶ 1-4; MD ECF 39-3, at 1 ¶¶ 1-4; MD ECF 39-4, at 1 ¶¶ 1-5.) They engaged in panhandling by

---

solicited person or by a person in the company of the solicited person, without the person's express consent; or

(e) To engage in conduct that would reasonably be construed as intended to intimidate, compel or force a solicited person to accede to demands.

(MD ECF 1-3, at 8-9 § 66-1(b)(2).)

standing on public sidewalks, or on the medians or shoulders of public streets, in areas frequented by pedestrians, near businesses, or near intersections to communicate their messages of need and pleas for assistance. (MD ECF 39-1, at 1 ¶¶ 5-8; MD ECF 39-2, at 1 ¶¶ 5-8; MD ECF 39-3, at 1 ¶¶ 5-8; MD ECF 39-4, at 1 ¶¶ 6-8.) All Plaintiffs make requests for charity at various times of the day, and Driggers, Willis and Rowland sometimes solicit charity at night. (MD ECF 39-5, MD ECF 39-6, MD ECF 39-7.) Charitable solicitation communicates Plaintiffs' need for food, money and other necessities while raising awareness about the existence of homelessness in the City and the people who are experiencing poverty. Through their requests for charity, Plaintiffs intend to convey that they are in need of assistance. (MD ECF 39-1, at 1 ¶ 8; MD ECF 39-2, at 1 ¶¶ 7-8; MD ECF 39-3, at 1 ¶ 15; MD ECF 39-4, at 1 ¶¶ 7-8.) They receive food, care packages containing water, hygiene products and clothing items, or gift cards from passersby. (MD ECF 39-1, at 1 ¶ 9; MD ECF 39-2, at 2 ¶ 9; MD ECF 39-3, at 2 ¶ 17; MD ECF 39-4, at 2 ¶¶ 9.) Sometimes passersby give cash. *Id*. At times, they are approached while engaging in charitable solicitation by individuals who want to talk with them about homelessness, or to offer assistance with jobs or housing. (MD ECF 39-1, at 2 ¶ 18.)

Plaintiffs have been arrested, jailed, and/or warned on multiple occasions against engaging in panhandling in downtown and other areas of the city under threat

of arrest for violating the Ordinance. (MD ECF 39-1, at 2 ¶¶ 10-15; MD ECF 39-2, at 2 ¶¶ 10-12; MD ECF 39-3, at 2 ¶¶ 9-12; MD ECF 39-4, at 2 ¶¶ 10, 12.) Plaintiffs wish to continue to engage in these activities and need to do so to contribute to their survival. (MD ECF 39-1, at 3 ¶ 21; MD ECF 39-2, at 3 ¶ 16; MD ECF 39-3, at 3 ¶ 19; MD ECF 39-4, at 2 ¶ 15.) The fear of arrest and prosecution, however, has significantly discouraged or hampered their ability to request donations. (MD ECF 39-1, at 2-3 ¶¶ 11-20; MD ECF 39-2, at 2 ¶¶ 13-15; MD ECF 39-3, at 2-3 ¶¶ 13, 18; MD ECF 39-4, at 2 ¶¶ 10, 13.) If the Panhandling Ordinance is allowed to stand, the suppression of Plaintiffs' First Amendment rights and the rights of those similarly affected will continue unabated.

## III.    Standard of Review

Preliminary injunctions are reviewed for an abuse of discretion, and the legal conclusions on which they are based are reviewed de novo. *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). Issues of constitutional fact are reviewed de novo. *Id*. This Court's review is "justifiably limited because 'the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success . . . with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief.'" *Mitsubishi Int'l Corp. v.*

*Cardinal Textile Sales, Inc*., 14 F.3d 1507, 1517 (11th Cir. 1994) (quoting *Revette v. International Association of Bridge Workers*, 740 F.2d 892, 893 (11th Cir. 1984) (per curiam)).

# SUMMARY OF THE ARGUMENT

The District Court did not abuse its discretion in determining that the City will not likely succeed on the merits of its claim that the Panhandling Ordinance is constitutional. The District Court correctly concluded that the Ordinance is content-based because it bars speech requesting immediate donations, but allows other types of speech. It thus falls squarely within the Supreme Court cases of *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015), and *City of Austin v. Reagan National Advertising. of Austin, LLC*, 596 U.S. 61 (2022), that hold that regulations are content-based if they discriminate based on topic, subject matter, or viewpoint.

The Panhandling Ordinance is content-based, and thus is reviewed under strict scrutiny. The Ordinance fails constitutional review because it is not narrowly tailored to any of the City's proffered compelling interests recited in the Ordinance—protecting its citizens' lives, health, safety and welfare. Additionally, the Ordinance is over-inclusive because it sweeps up speech that does not implicate those interests. The Ordinance is also under-inclusive as it allows other forms of speech that would have the same impact on the governmental interests as the prohibited speech, such as a person walking into traffic to solicit signatures for a petition. Also, many of the harms that the City recites can be addressed by less intrusive tools independent of

the Ordinance, and the City offers no evidence that it has even considered, much less attempted, any other method.

Similarly, the Ordinance cannot pass intermediate scrutiny should the Court find that the Ordinance is content-neutral. The City has not demonstrated that the Ordinance is narrowly tailored to significant interests, or that there are sufficient alternative channels of communications.

The District Court did not err in determining that the irreparable harm suffered by Plaintiffs and the balance of equities weigh in favor of granting a preliminary injunction.

The District Court did not abuse its discretion in determining that an evidentiary was unnecessary. Any disputed facts were not material to the issues raised in the preliminary injunction. There also were no credibility issues for the Court to consider. The Court's decision not to hold oral argument also was well within its discretion.

**ARGUMENT**

## I.  THE DISTRICT COURT CORRECTLY FOUND THAT THE CITY'S PANHANDLING ORDINANCE WAS A CONTENT-BASED SPEECH REGULATION.

Defendant/Appellant City ("City") finds fault in the District Court's determination that § 66-1, Code of Ordinances, City of Daytona Beach, Florida is content-based, citing two primary arguments: (1) the Court failed to appreciate the impact of *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022), on First Amendment doctrine (Initial Br., at 26-37)[3]; and (2) the Court "fundamentally misconstrued the purpose and effect" of the City's Panhandling Ordinance. (*Id.* at 37-44.) Both of these contentions are without merit; the Panhandling Ordinance is content-based, as the District Court properly determined, and is not narrowly tailored to the governmental interests that purportedly justify it. The District Court thus found that the City is not likely to succeed on the merits of the case.

### A.  The Panhandling Ordinance only singles out and regulates requests for immediate donations.

As the District Court ruled, the Ordinance singles out requests for immediate donations, banning them in locations throughout the City and when made under

---

[3] In citing to Defendant/Appellant's Initial Brief, Plaintiffs will use the page numbers indicated in the Eleventh Circuit filing stamp at the top of the brief, rather than the page numbers at the bottom of each page.

certain circumstances or at certain times of day. (MD ECF 72, at 9-11; MD ECF 1-3 § 66-1(c).) These bans apply only to those requesting immediate donations. (MD ECF 1-3 § 66-1(b)(3).) No other type of speech, such as seeking support for political, religious, or social causes, is subject to the regulations; nor are solicitations for things other than donations. (MD ECF 72, at 9.) Thus, whether the Ordinance's criminal penalties apply depends entirely on the content of the message.

Speech restrictions are content-based when they "single out any topic or subject matter for differential treatment." *See Austin,* 596 U.S. at 71. This is so even if the law does not favor one viewpoint over another. *Reed*, 576 U.S. at 169("[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter."). Since *Reed,* courts have unanimously found that anti-panhandling ordinances were content-based restrictions on speech. *See Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019); *Henagan v. City of Lafayette*, No. 6:21-CV-03946, 2022 WL 4546721, at *3 (W.D. La. Sept. 27, 2022); *Messina v. City of Fort Lauderdale*, 546 F. Supp. 3d 1227, 1242-43 (S.D. Fla. 2021) (collecting cases). Because the Ordinance singles out a single topic or subject matter—requests for immediate donations—it is a content-based speech restriction that is presumptively unconstitutional and subject to strict scrutiny. The government bears the burden of proving that the law is narrowly tailored to a compelling

government interest and is the least restrictive means of advancing that interest. *Reed*, 576 U.S. at 171.

The Panhandling Ordinance is analogous to the sign code at issue in *Reed*, which contained "content-discriminatory classifications" for only certain messages, in that the City subjects only a specific topic—immediate requests for donations—to different treatment than other messages. (*See* MD ECF 72, at 11.) The Ordinance's definition of "panhandle" explicitly provides that the speech being restricted is only solicitations for immediate donations, a form of traditionally protected speech. (MD ECF 1-3, at 10, § 66-1(b)(3).) *See Vill. of Schaumburg v. Citizens for a Better Env't.*, 444 U.S. 620, 632 (1980) ("[C]haritable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment."). The City acknowledges that the Ordinance only regulates immediate donations (Initial Br., at 38, 40). The Ordinance clearly does not regulate other types of solicitation, e.g., for event tickets, business, or attendance at religious services. (*See* MD ECF 1-3, at 10, § 66-1(b)(3); *compare* City Code Ch. 66, Peddlers, Solicitors, Canvassers, Itinerant Vendors, Art. I, Sec. 66-1, Panhandling, begging & solicitation, *with* Art. II, Commercial Peddlers, Solicitors,

Canvassers, Itinerant Vendors, & Art. V, Off-Premises Solicitation.)[4] Thus, the District Court did not abuse its discretion in finding that the ordinance regulates only solicitations for charitable contributions and is therefore content-based. (MD ECF 72, at 9-10.)

### B. The District Court did not err in determining that, even in light of *Austin*, the Panhandling Ordinance is content-based.

The City argues that *Austin* modifies the content-neutrality inquiry set forth in *Reed*. (Initial Br., at 31.) However, the *Austin* Court was clear that the decision did not "cast doubt on any of our precedents recognizing examples of topic or subject-matter discrimination as content based" and instead reaffirmed that restrictions on solicitation are not content-based only if "they do not discriminate based on topic, subject matter, or viewpoint." *Austin*, 596 U.S. at 72, 76. (*See also* MD ECF 72, at 10-11.) *Austin* did not reject *Reed*; it rejected the Fifth Circuit's application of *Reed*, "that a regulation cannot be content neutral if it requires reading the sign at issue." *Austin*, 596 U.S. at 69. Both *Reed and Austin* explicitly hold that a speech regulation is content-based if it "'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *Id.* (quoting *Reed*, 576 U.S. at 163). Regarding solicitation, *Austin* stated that the

---

4    The City Code (last accessed Jan. 22, 2024) can be found at: https://library.municode.com/fl/daytona_beach/codes/code_of_ordinances?nodeId =PTIICOOR_CH66PESOCAITVE.

government could regulate solicitation so long as it did not "discriminate based on topic, subject matter, or viewpoint." *Id*. at 72. Importantly, the Court in *Austin* used the ordinary definition of "solicitation," going so far as to quote Black's Law Dictionary: "solicitation—that is, speech 'requesting or seeking to obtain something' or '[a]n attempt or effort to gain business.'" *Id*. *Austin* is not applicable here, because the Panhandling Ordinance does discriminate based on subject matter, as the District Court correctly held. (ECF 72, at 11.) *Accord Henagan*, 2022 WL 4546721, at *3 (ordinance restricting begging and soliciting money "does discriminate based upon topic and speaker").

The City incorrectly characterizes its Ordinance as a "reasonable time, place, and manner restriction" subject to intermediate scrutiny (Initial Br., at 27), citing to *Smith v. City of Fort Lauderdale*, 177 F.3d 954 (11th Cir. 1999), and *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000). These cases were decided before *Reed* and their determinations that the regulations at issue were content-neutral would not be correct post-*Reed*. The cases cannot support the City's contention because time, place, and manner restrictions do not apply to content-based, but rather only content-neutral regulations. *See Baker v. City of Fort Worth*, 506 F. Supp. 3d 413, 420 (N.D. Tex. 2020) ("[C]ontent neutrality is a prerequisite to reasonable time, place, and manner restrictions."); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989) ("[A]

regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, *content-neutral* interests") (emphasis added). *Austin* does not change the analysis. Unlike in *Reed,* in which the challenged ordinance contained "content-discriminatory classifications" for political messages, ideological messages, or directional messages concerning events sponsored by religious and nonprofit organizations, the off-premises sign ordinance in *Austin* was content-neutral because it required an examination of the sign's message only to inform "the sign's relative location" and was "therefore similar to ordinary time, place, or manner restrictions." 596 U.S. at 71.

As noted above, the City's Panhandling Ordinance only regulates certain communications: requests for immediate donations, Plaintiffs' chosen topic of discourse. It does not reach all solicitation, as that term was used in *Austin*, as the Ordinance allows politicians to solicit signatures on petitions, ticket sellers to offer event tickets, or clergy to hold signs reading "God Bless" and advertise a congregation at a busy intersection without fear of arrest. (*See* MD ECF 1-3 (applying restrictions to requests for donations but not purchases of goods "unless a reasonable person would understand that the purchase is in substance a donation")). In contrast, when Plaintiff Driggers stands at the same intersection with a sign that reads "Anything Helps, God-Bless" or "Hungry, Anything Helps," he is taken to jail. (MD ECF 39-1,

at 5-15.) Whether Plaintiffs violate the Ordinance depends on what they say—for example, whether they offer an item for sale or make a request for charity—and not when (time), where (place), or how (manner) they say it. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 27 (2010) (law is content-based if violation "depends on what [Plaintiffs] say"); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (First Amendment prohibits "restrictions distinguishing among different speakers, allowing speech by some but not others"). Because only certain types of solicitation (requests for immediate donations), but not others (ticket sellers, etc.), are regulated by the Panhandling Ordinance, it contains "content-discriminatory classifications" and therefore is not a time, place, and manner restriction. *See Austin*, 596 U.S. at 71.

Nor do the two out-of-circuit cases relied on by the City, *Mazo v. New Jersey Secretary of State*, 54 F.4th 124 (3d Cir. 2022), *cert. denied sub nom., Mazo v. Way*, 144 S. Ct. 76 (2023), and *Porter v. Martinez*, 68 F.4th 429 (9th Cir. 2023), lend support to its claim that *Austin* changed *Reed*'s application to panhandling ordinances. In *Mazo*, plaintiffs challenged a New Jersey election law requiring candidates to obtain consent from individuals or incorporated associations before naming them in their slogans, arguing that the consent requirement was content-based because "the law applies only when certain words are present in a statement" or when an official would need to "examine the content of the message that is conveyed to determine

whether a violation has occurred." 54 F.4th at 131-32, 148. Like the Court in *Austin*, the Third Circuit rejected this argument, determining instead that the consent requirement was content-neutral because it "applies to all slogans, regardless of message," and does not "single out any topic or subject matter for differential treatment." *Id.* at 148-49 (internal citation omitted).

*Porter* involved a First Amendment challenge to a California law that prohibits honking a vehicle's horn except when reasonably necessary to warn of a safety hazard. 68 F.4th at 434. The Ninth Circuit deemed the law content-neutral, pointing out that the law "prohibits all driver-initiated horn use except when such use is 'reasonably necessary to [e]nsure safe operation' of the vehicle." *Id.* at 441 (emphasis omitted). Thus, it applies just the same for "political honking, ideological honking, celebratory honking, or honking to summon a carpool rider" when a safety hazard is not present. *Id.* "[A]n officer need not examine the 'content' of the honk the way one might read a sign or evaluate a spoken statement—he need only observe the traffic circumstances and determine if a safety risk is present." *Id.* at 441-42.

Importantly, and contrary to the City's argument, neither of these cases suggests that *Austin* constitutes a "true point of departure" from *Reed*, instead confirming that the two decisions are entirely consistent. *Mazo*, 54 F.4th at 148-149; *Porter*, 68 F.4th at 442. Because the Panhandling Ordinance restricts only certain solicitations based

on the content of those solicitations, these cases—and *Austin*—are distinguishable. *See Messina,* 546 F. Supp. 3d at 1240-41 (because city ordinance restricting "[a]ny solicitation made in person requesting an immediate donation of money or other thing of value . . . prohibits one topic and allows all others, it is content based.") (emphasis omitted); *see also* ECF 72, at 9 ("[I]ndividuals are only prohibited from asking for charitable donations while permitted to solicit regarding any other topic").

Indeed, cases from other circuits confirm the District Court's reading that *Austin* did not overturn or otherwise modify the holding from *Reed. See Int'l Outdoor, Inc. v. City of Troy,* 77 F.4th 432, 436, n.1 (6th Cir. 2023) (applying *Reed* to determine that restrictions were content-based after "supplemental briefing on what, if any, effect the recent Supreme Court decision" in *Austin* had)*; Project Veritas v. Schmidt,* 72 F.4th 1043, 1056 (9th Cir. 2023) (noting that *Austin* "d[id] not affect the Court's longstanding holding that regulations that discriminate based on the topic discussed or the idea or message expressed . . . are content based") (internal quotations & citations omitted); *Schrader v. Dist. Att'y of York Cnty.,* 74 F.4th 120, 127 (3d Cir. 2023) (applying *Austin* to hold that a law which "single[s] out [a] topic or subject matter for differential treatment" is content based) (internal quotations & citations omitted); *GEFT Outdoor, LLC v. City of Westfield*, 39 F.4th 821, 824 (7th Cir. 2022) (explaining that a regulation is not content-based if it "require[s] an examination of

speech only in service of drawing neutral, location-based lines" but is content-based

if it "single[s] out any topic or subject matter for differential treatment" (citing *Austin*,

596 U.S. at 71)).

The District Court properly considered the impact of *Austin* on the content

neutrality analysis set forth in *Reed*, and ultimately determined that the City's

Panhandling Ordinance was more like the ordinance at issue in *Reed* than the one at

issue in *Austin* because a "specific topic—requests for charity—is subject to different

treatment than other messages." (MD ECF 72, at 11.) There is no error in the District

Court's determination that "the Challenged Provisions are content based because they

apply exclusively to solicitations or requests for charitable donations." (MD ECF 72,

at 9.)

## C. The District Court did not "misconstrue" the discriminatory nature of the Panhandling Ordinance.

The City's argument that the Panhandling Ordinance is content-neutral because

"it reaches every conceivable instance where an immediate donation is made in

response to a request" entirely misses the mark. In fact, it is because the Ordinance

*only* regulates requests or solicitations for immediate donations of money that it

discriminates based on topic or viewpoint and thus is content-based. As aptly noted

by the District Court, "this is not a case where the government regulates all types of

solicitation, without regard to topic, subject matter, or viewpoint…. [W]hen reading

the Ordinance as a whole, it is clear it applies only to charitable solicitations." (MD ECF 72, at 9-10.)

The Panhandling Ordinance does not, as the City contends, regulate solicitation generally, regardless of whether its definition purports to do so. "Panhandle" is defined as "to beg or make any demand or request made in person for an immediate donation of money or some other article of value." (MD ECF 1-3, at 10, § 66-1(b)(3).) This definition explicitly provides that the speech being restricted is not all solicitations, but merely those solicitations that are for immediate donations. Put another way, the ordinance is triggered by the content of the solicitation: whether it includes a request for an immediate donation of money or other article of value.[5]

The City's argument that the Ordinance's definition of "panhandling" includes "all requests for an immediate donation of money" does not render the Ordinance content-neutral. (*See* Initial Br., at 38.) A law cannot remove an entire topic of speech—here, requests for immediate donations—from the marketplace of ideas any more than it can discriminate based on viewpoint. *See Reed,* 576 U.S. at 169. And, as the District Court rightly noted (MD ECF 72, at 9-10), the City's definition of

---

[5] That this is the reach of the Ordinance is made apparent by another clause in the definition: "Any purchase of an item for an amount far exceeding its value, under circumstances where a reasonable person would understand the purchase is in substance as donation, constitutes donation as contemplated in this definition." (*See* MD ECF 1-3, at 10, § 66-1(b)(3).) If all solicitations were regulated, this portion of the Ordinance would be superfluous.

"panhandling" does not include all types of solicitation, as that term was used in *Austin*; it does not include solicitations for the sale of goods or services, or solicitations for things that do not have monetary value, such as signatures on a petition, attendance at church, a vote for a political candidate, or solicitations for donations that are not immediate.[6] (*See* MD ECF 1-3, at 10, § 66-1(b)(3).) *See also Messina*, 546 F. Supp. 3d at 1240-41.

And the City's claim that the Ordinance is content-neutral because it regulates even solicitations for immediate donations of money for political or religious purposes (Initial Br., at 38), overlooks the fact that the Ordinance regulates only certain solicitations based on the content of what is being requested. Like the ordinance at issue in *Reed*, even if the Panhandling Ordinance does not discriminate based on speaker, that does not automatically render it content-neutral. 576 U.S. at 170. Because the Ordinance only "limits in-person, vocal solicitations for money or things of value" and "doesn't touch other topics of discussion," its application does depend on what a person says. *Messina,* 546 F. Supp. 3d at 1240–41 (emphasis omitted); *see also Austin*, 596 U.S. at 74 ("[A] regulation of speech cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result"); *Loper v. N.Y.C. Police*

---

[6] Under the plain language of the Ordinance, the Plaintiffs could hold a sign requesting donations five minutes in the future and not run afoul of the law.

*Dep't,* 999 F.2d 699, 704 (2d Cir. 1993) ("Even without particularized speech, however, the presence of an unkempt and disheveled person holding out his or her hand or a cup to receive a donation itself conveys a message of need for support and assistance.").

The City's reliance on claimed similarities between this case and *National Federation of the Blind of Texas Inc. v. City of Arlington*, No. 3:21-CV-2028-B, 2022 WL 4125094 (N.D. Tex. Sept. 9, 2022), is unavailing. There, the District Court determined that the challenged ordinance was content-neutral because it treated bin-based signage soliciting donations differently based only on whether the donations were "to be deposited in that location" or "for deposit elsewhere or pickup"—not on the topic or subject matter of the solicitation. *Id.* at *7. That case has no import here, as the Panhandling Ordinance applies based on the content of the request being made, not whether a sign informs a neutral location-based distinction, as in *Austin* or *National Federation of the Blind of Texas*. *Id.*; *Austin*, 596 U.S. at 71.

The District Court's interpretation of the regulated speech was not in error. As the City clearly acknowledges, whether it is referred to as panhandling, begging, or solicitation, only requests for immediate donations[7]—and not all solicitations—are

---

[7] The City takes issue with the Court's description of the regulated requests as "charitable solicitations." Neither the Supreme Court nor the Eleventh Circuit make any distinction regarding the use of a charitable contribution in rulings that requests for charity or donations are protected speech. *See Vill. of Schaumburg*, 444 U.S. at

restricted by the Panhandling Ordinance.[8] (Initial Br., at 37-38.) This distinction is what renders the Ordinance content-based and thus subject to strict scrutiny. The District Court did not abuse its discretion in finding that the City is not likely to succeed on the merits of the case as the Ordinance is content-based.

## II. EVEN IF DEEMED FACIALLY CONTENT-NEUTRAL, THE PANHANDLING ORDINANCE IS CONTENT-BASED BECAUSE IT TARGETS CERTAIN SPEAKERS AND THEIR MESSAGES.

Even if this Court were to find that the City has a likelihood of prevailing on its argument that the Ordinance is facially content-neutral, it should still be reviewed under strict scrutiny. Some laws, "though facially content neutral, will be considered content-based regulations of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Reed*, 576 U.S. at 164 (quoting *Ward*, 491 U.S. at 791). Where "there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction,

---

635-36; *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 788-89 (1988); *Smith*, 177 F.3d at 956.

[8] Even if the City intended the Panhandling Ordinance to be content neutral – which is debatable – (Initial Br., at 43), that fact is of no consequence. *See Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*, No. 1:22-CV-01679, 2023 WL 2692400, at *9 (M.D. Pa. Mar. 29, 2023) ("[T]he Borough's purpose and intent in drafting the Ordinance does not make the Ordinance content neutral.").

for instance, that restriction may be content based" and thus subject to strict scrutiny. *Austin*, 596 U.S. at 76.

The Panhandling Ordinance cannot escape that it is an inherently content-based restriction. (*See* ECF 105, at 6.) First, "it defines the prohibited conduct by referring to the content of the speech—a request for an immediate donation of money or something else of value." *Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*, 470 F. Supp. 3d 888, 903 (S.D. Ind. 2020) (citing *Reed,* 576 U.S. at 164).

Second, the Panhandling Ordinance itself and the voluminous record the City provides as justification for the Ordinance focuses on only a certain type of speech— "panhandling and begging"—and those who participate in that speech—"panhandlers and beggars." (*See generally* MD ECF 1-3, at 2-8; MD ECF 20-2 to 20-12.) The City Commission designed the Ordinance "to target those speakers and their messages for disfavored treatment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011). Measures passed solely to target a particular type of speech or speaker, though facially content neutral, are unconstitutional. *Id.* at 566 ("A government bent on frustrating an impending demonstration might pass a law demanding two years' notice before the issuance of parade permits. Even if the hypothetical measure on its face appeared neutral as to content and speaker, its purpose to suppress speech and its unjustified burdens on expression would render it unconstitutional."). The "absence of a neutral

justification" for a restriction on speech "prevents the city from defending [that restriction] as content neutral." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429-30 (1993).

In its passage of the Panhandling Ordinance, the City also relies on the legislative record and "effectiveness" of a nearly identical ordinance passed by the nearby city of St. Augustine, Florida. (*See* MD ECF 20-2, at 189-190; MD ECF 20-10 to 12). While the City erroneously claims that this reliance demonstrates narrow tailoring,[9] of more significance is the fact that the City's use of St. Augustine's legislative record reveals that it intended the Ordinance to target panhandlers and their speech. (*See* MD ECF 20-5, at 83-84 (testimony from Danny Fuqua that, on a recent visit to St. Augustine, he and his wife did not see any panhandlers); MD ECF 20-5, at 200 (testimony from Officer James Thomas that he "went all over the historic district looking for panhandlers" on a recent visit to St. Augustine and "couldn't get anyone to panhandle me")).

---

[9] The City's citation to *Billups v. City of Charleston*, 961 F.3d 673, 689 (4th Cir. 2020), and *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1301 (11th Cir. 2017), for the proposition that looking to "the experiences of other cities and the legislative solutions tried elsewhere" demonstrates narrow tailoring (Initial Br., at 51-52) is misplaced. What these cases establish is that a speech regulation may fail narrow tailoring where the City has disregarded alternative measures that are less burdensome on protected speech. The City's adoption of St. Augustine's record shows nothing about whether it meaningfully considered or attempted less restrictive alternatives to the Panhandling Ordinance.

The legislative history used to justify the Ordinance lays bare its true goal: to remove disfavored speakers and their speech from the City. (*See, e.g.,* MD ECF 1-3, at 7, § 66-1(a) (justifying the Ordinance's speech restrictions due to the troublesome "presence of panhandlers and beggars" and "habits attributable to panhandlers").) Accordingly, the Ordinance must be subjected to strict scrutiny even if deemed facially content-neutral.

## III. THE DISTRICT COURT CORRECTLY HELD THAT THE CITY'S PANHANDLING ORDINANCE CANNOT SURVIVE EITHER STRICT OR INTERMEDIATE SCRUTINY.

Because the Panhandling Ordinance is content-based, it must be reviewed under strict scrutiny, which "usually sounds the death knell for a challenged ordinance, particularly in the arena of the First Amendment." *Messina*, 546 F. Supp. 3d at 1239; *see also Williams-Yulee v. The Fla. Bar,* 575 U.S. 433, 444 (2015) ("We have emphasized that 'it is the rare case' in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest.") (citations omitted). However, because the Ordinance is not narrowly tailored to any of the City's proffered interests, it fails constitutional review regardless of whether strict or intermediate scrutiny applies.

### A. The Panhandling Ordinance does not withstand strict scrutiny because it is not narrowly tailored to any compelling government interest.

The District Court correctly found that the Panhandling Ordinance is not narrowly tailored, stating that the City's showing was "woefully insufficient." (MD ECF 72, at 12-13.) "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. The City must also show that the laws are the "least restrictive means" of accomplishing that vital interest. *See U.S. v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 813 (2000). Moreover, because "'[c]ontent-based regulations are presumptively invalid,'. . . the Government bears the burden to rebut that presumption." *Id.* at 817 (quotation omitted).

The only compelling interest recited in the Panhandling Ordinance is protecting its citizens' lives, health, safety and welfare. (MD ECF 1-3, at 3.)[10] But the Panhandling Ordinance is not narrowly tailored to the City's proffered interests in public health and safety. Laws are not narrowly tailored where they "burden substantially more speech than is necessary to further the government's legitimate

---

[10] The other interests articulated in the ordinance are not deemed by the City to be compelling. (*See* MD ECF 1-3, at 2-8.) The caselaw supports this. *See Messina*, 546 F. Supp. 3d at 1243-44 (protecting economic interests or making residents and tourists feel less intimidated or fearful are not compelling interests).

interests[,]" and are therefore fatally over-inclusive. *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quoting *Ward*, 491 U.S. at 799). Laws may also fail the narrow tailoring requirement when they are under-inclusive, in that they single out a certain type of speech but do not regulate others that are equally problematic. *See Reed,* 576 U.S. at 172; *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011).

As discussed more fully below, while the City posits many problems associated with the speech regulated by the Panhandling Ordinance, it is not narrowly tailored because it is both over- and under-inclusive.[11] It is over-inclusive because it sweeps up speech that does not implicate the interests that purportedly justify it, such as a person sitting quietly on the city Boardwalk holding a sign that reads "Please help." The Ordinance is also under-inclusive, because it ignores other forms of solicitation

------

[11] Plaintiffs do not suggest that over- or under-inclusiveness are independent First Amendment violations. However, these doctrines are not, as the City contends, tools to determine whether a law is content-based (Initial Br., at 35, n.15). Rather, the over-inclusiveness or under-inclusiveness of a speech restriction may be considered to determine whether a law is narrowly tailored and actually serves a compelling government interest. *See Williams-Yulee,* 575 U.S. at 449 ("Underinclusiveness can also reveal that a law does not actually advance a compelling interest."); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 122 (1991) (a statute is overinclusive and thus not narrowly tailored where "a substantial portion of the burden on speech does not serve to advance" the government's purported goals) (citing *Ward*, 491 U.S. at 799).

that would have the same impact as the prohibited speech, such as a person walking into traffic to solicit signatures for a petition.

In addition, many of the harms that the City recites can be addressed by less intrusive tools independent of the Panhandling Ordinance, and the City offers no evidence that it has even considered, much less attempted, these tools to combat the complained-of harms. *McCullen*, 573 U.S. at 494-95; *see also McCraw v. City of Okla. City*, 973 F.3d 1057, 1075 (10th Cir. 2020) ("But the only way for the City to evaluate alternatives is to *consider* them—precisely the burden articulated in *McCullen*. Because the City presents us with no evidence that it contemplated the relative efficacy or burden on speech of any alternatives, we conclude it has not met its burden.") (emphasis added). Plaintiffs have pointed to a variety of other laws that could be enforced to prevent the harms allegedly associated with "panhandling" without burdening protected speech: state statutes prohibiting trespass, §§ 810.08 & 810.09, Fla. Stat.; disorderly conduct and breach of the peace, § 877.03, Fla. Stat.; assault and battery, §§ 784.011 & 784.03, Fla. Stat.; requiring vehicles and pedestrians to yield to emergency vehicles, § 316.126 Fla. Stat.; or the City's own disorderly conduct, § 62-37, and battery ordinances. § 62-36, City Code." (MD ECF 39, at 22.) However, the City fails to demonstrate that it has attempted or even contemplated using these laws to prevent the problems it associates with panhandling.

The City argues that the Panhandling Ordinance is justified by its interests in preserving public health and traffic and pedestrian safety. (Initial Br., at 57-59.) Assuming, *arguendo,* that protecting public health and traffic and pedestrian safety are compelling interests, the Panhandling Ordinance cannot survive strict scrutiny because it is not narrowly tailored to those interests. The City cites to problems with public urination and defection (Initial Br., at 57-58), but the act of requesting immediate donations in public does not cause those problems,[12] nor does the Ordinance prohibit them. (*See generally* MD ECF 1-3.) The City cannot justify a restriction on speech by relying on the fact that certain objectionable but unrelated conduct is linked to those that engage in that speech. *See Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1294 (D. Colo. 2015) ("At times, threatening behavior may accompany panhandling, but the correct solution is not to outlaw panhandling. The focus must be on the threatening behavior. Thus, the problem in this

---

[12]  The City makes much of the testimony of a Dr. Steven Miles, who opined that exposure to "open defecation or urination in the City" would be "detrimental to the health of citizens and tourists" and that "the City Commission should strongly consider passing the ordinance because if not, we're going to have an outbreak or problem." (Initial Br., at 58.) However, the medical literature upon which Dr. Miles relies nowhere mentions the act of panhandling, does not establish any link between panhandling and infectious disease, and was furnished by the City's counsel, rather than through Dr. Miles's own independent research. (MD ECF 20-2, at 29, 235-355; MD ECF 20-3, at 1-277.)

case is that Grand Junction has taken a sledgehammer to a problem that can and should be solved with a scalpel.").

The Ordinance is not narrowly tailored to public health because it does not address such an interest in a direct and material way. Moreover, any public health issues related to public urination and defecation can be more effectively addressed using the City's Disorderly Conduct ordinance, which makes it a violation of the City Code punishable by up to 60 days in jail and/or a $500 fine if a person "defouls or disturbs public property or private property of another so as to create an unsafe, unhealthy or unsanitary condition." *See* Daytona Beach City Code § 62-37; *see also id.* § 1-14.

Similarly, the Panhandling Ordinance is not narrowly tailored to the City's interests in pedestrian and traffic safety. As noted above and as identified by the District Court, the provisions of the Ordinance focused on traffic safety restrict only panhandling, or requests for immediate donations, and were therefore underinclusive. Regulations that restrict charitable solicitation but not other types of speech have been found unconstitutional even where the state interest is to promote traffic safety. *Vigue v. Shoar*, 494 F. Supp. 3d 1204, 1224-25 (M.D. Fla. 2020); *Messina,* 546 F. Supp. 3d at 1248. Just as in *Messina*, there is no explanation for why panhandling is inherently more dangerous than other speech on or near roadways. Approaching cars near traffic

signals to solicit donations is banned, but approaching cars to talk about politics, the weather, or anything else is allowed. Such restrictions on charitable solicitation based on the potential for traffic hazards or impediments are under-inclusive, as there is no legitimate reason to single out requests for donations from other types of speech—political or commercial solicitation that creates a traffic hazard is "equally dangerous." *See Rodgers*, 942 F.3d at 457; *Bischoff v. Fla.*, 242 F. Supp. 2d 1226, 1257 (M.D. Fla. 2003). Thus, these sections are not narrowly tailored and therefore violate the First Amendment.

In short, the City has not demonstrated that the Panhandling Ordinance is narrowly tailored to a compelling state interest, and therefore it fails strict scrutiny. The District Court did not abuse its discretion in finding that the City is not likely to succeed on the merits of the case as the Ordinance will fail strict scrutiny.

**B.    The Panhandling Ordinance does not withstand intermediate scrutiny because it is not narrowly tailored to any significant government interest.**

The City attempts to find fault with the Order granting a preliminary injunction by stating that the District Court did not address intermediate scrutiny. (Initial Br., at 44.) Of course, the Court did not need to address this level of scrutiny because it concluded that the Ordinance was content-based. However, the Ordinance fails even if reviewed under intermediate scrutiny, which requires that the restrictions: (a) serve

a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication. *Ward,* 491 U.S. at 791. The City is unable to meet its burden to show that it is likely to succeed on the merits that the Ordinance satisfies intermediate scrutiny, as it is not narrowly tailored to its asserted interests.

In making its argument that the Panhandling Ordinance survives intermediate scrutiny, the City entirely ignores the Supreme Court's most recent articulation of the intermediate scrutiny standard in *McCullen*, a case which injected increased rigor into the narrow tailoring requirement for content-neutral speech regulations. The narrow tailoring inquiry is a crucial part of intermediate scrutiny:

> The tailoring requirement does not simply guard against an impermissible desire to censor. The government may attempt to suppress speech not only because it disagrees with the message being expressed, but also for mere convenience. Where certain speech is associated with particular problems, silencing the speech is sometimes the path of least resistance. But by demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily "sacrific[ing] speech for efficiency."

*McCullen*, 573 U.S. at 486 (citing *Riley,* 487 U.S. at 795). For a content-neutral speech restriction to be narrowly tailored, the City must demonstrate that the restriction does not burden substantially more speech than necessary to further its interests. *Id.* To do so requires a showing "that [the City] seriously undertook to

address the problem with less intrusive tools readily available to it," *id.* at 494, and that "it actually *tried* other methods to address the problem, *Reynolds v. Middleton*, 779 F.3d 222, 229 (4th Cir. 2015) (explaining that *McCullen's* rejection of the Commonwealth's narrow tailoring argument makes clear that "argument unsupported by the evidence will not suffice to carry the government's burden" under intermediate scrutiny) (emphasis in original). Here, the City falls far short of *McCullen's* requirements.

Plaintiffs do not dispute that some (although not all) of the interests asserted by the City are significant, e.g., the health and safety of its residents. However, the City fails to demonstrate—or even provide unsupported argument—how the Ordinance is narrowly tailored to those interests, offering "little evidence of non-speculative harms or interests that the Ordinance's restrictions alleviate in a direct and material way." *See Brewer v. City of Albuquerque*, 18 F.4th 1205, 1227 (10th Cir. 2021). The City points to anecdotal evidence[13] of "the adverse effects of panhandling" and claims this demonstrates narrow tailoring (Initial Br., at 51-53), but fails to address whether the

---

[13] The evidence the City relies on is not in fact the evidence proffered in support of the Ordinance at the legislative hearings but instead declarations offered in support of its Response to Plaintiffs' Second Motion for Preliminary Injunction. And in fact, one of these declarations (MD ECF 44-8), was filed as an incomplete copy (missing pages 2 and 4) and then refiled (MD ECF 73, 73-1) after the Court issued its Order granting the preliminary injunction. (MD ECF 72.) Accordingly, in some instances, the City is citing evidence to this Court that was not before the District Court when it made its decision. (*See* Initial Br., at 47, 51, 53, 58, 61.)

Panhandling Ordinance burdens more speech than necessary to further its legitimate interests, an absence particularly telling here, where the City's evidence of "problems posed by panhandling" relate to conduct it associates with panhandlers and not the speech actually being restricted by the ordinance. (*See* MD ECF 1-3, at 7-8.) In fact, the "problems to which [the City's] evidence *does* point are not likely to be ameliorated by the relevant subsections of the ordinance." *Brewer*, 18 F.4th at 1227; *see also Messina v. City of Ft. Lauderdale*, No. 21-cv-60168-ALTMAN/Hunt, 2024 WL 301574, *22 (S.D. Fla., Jan. 26, 2024) (Hand-to-Hand Transmission Clause was subject to intermediate scrutiny, but was not narrowly tailored as the City failed to provide specific evidence to show that the traffic problems of concern to the City were caused by the street solicitation that is the subject of the ordinance). As detailed previously, *supra* § III(A), the Ordinance is both over- and under-inclusive. It does not prohibit the harmful conduct that the City cites to justify it, and the City can prevent said conduct by simply enforcing other laws that do directly proscribe the harmful behaviors. However, the City has entirely failed to address whether it has considered or attempted to use readily available, less intrusive tools.

The City suggests that "it is not the business of the Courts to second-guess reasonable legislative decisions" and that the District Court "improperly discounted the legislative judgment" of the City. (Initial Br., at 48-49, 53-54.) But the deference

shown to the legislative branch does not insulate it from judicial review—"[o]n the contrary, we have stressed in First Amendment cases that the deference afforded to legislative findings does not foreclose our independent judgment of the facts bearing on an issue of constitutional law." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 666 (1994) (internal quotations and citations omitted); *see also Buehrle v. City of Key West*, 813 F.3d 973 (11th Cir. 2015) ("The City must demonstrate that it had a reasonable basis for believing that its regulation would further these legitimate interests. This burden is not a rigorous one. But a municipality cannot get away with shoddy data or reasoning. It must rely on at least some pre-enactment evidence that the regulation would serve its asserted interests."). For the purposes of intermediate scrutiny, while it is true that a regulation need not be the least restrictive means of serving the government's interests, "there is a significant distinction between failing to employ less-restrictive means and completely disregarding obvious less-burdensome alternatives." *FF Cosmetics FL, Inc. v. City of Miami Bch.*, 866 F.3d 1290, 1300 (11th Cir. 2017). And the means chosen to regulate speech must not be "substantially broader than necessary to achieve the government's interest." *Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale*, 11 F.4th 1266, 1295 (11th Cir. 2021) (citing *Ward*, 491 U.S. at 799-800). Like the regulations that failed under intermediate scrutiny in *Ft. Lauderdale Food Not Bombs* and *FF Cosmetics*, the

Panhandling Ordinance is not narrowly tailored because it is "broader than necessary" to achieve the City's interests, *Ft. Lauderdale Food Not Bombs*, 11 F.4th at 1296, and "the record shows that obvious less-burdensome alternatives were completely disregarded." *FF Cosmetics FL, Inc.*, 866 F.3d at 1301.

The City lastly relies on the third prong of the intermediate scrutiny test, claiming that the Ordinance provides "alternative avenues of communication." (Initial Br., at 54.) As an initial matter, the City's claim that the Ordinance is narrowly tailored because it leaves open alternative channels of speech improperly "conflates narrow tailoring analysis with an *alternative channels* analysis." *Brewer*, 18 F.4th at 1239 (emphasis in original); *see also Cutting v. City of Portland*, 802 F.3d 79, 88 (1st Cir. 2015) ("the fact that there are other places where plaintiffs may engage in their expressive activity 'misses the point' [regarding the narrow tailoring inquiry]") (quoting *McCullen*, 573 U.S. at 489)).

And even when considered on its merits, the City's argument about alternative channels is unconvincing. The City recites that more than 97.5% of the City is available for solicitation. (Initial Br., at 55.) Assuming *arguendo* for purposes of this response that the 97.5% is accurate (though Plaintiffs plan to disprove this at trial), the City offers no analysis of how much of that percentage offers sufficient opportunities for Plaintiffs to communicate their messages of need in a public forum. For example,

a large percentage of City land is not public but rather private residential property that is unavailable for charitable solicitation due to trespass and other state property laws. *See* §§ 70.002, 810.08, & 810.09, Fla. Stat. Also, much of that percentage includes areas, such as undeveloped forests, where there are few other people, and thus those "alternative channels" are not likely to reach the desired audience. *See City of Ladue v. Gilleo*, 512 U.S. 43, 56-57 (1994) ("[d]isplaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means . . ."); *McCullen*, 573 U.S. at 488-90 (burdens on speech posed by abortion clinic buffer zone law were not addressed by assertions that plaintiffs could still chant slogans or display signs). The City's blanket assertion that there are alternative avenues of communication is insufficient.

The City has not demonstrated that the Ordinance is narrowly tailored, or that there are sufficient alternative channels of communications, and so the Ordinance fails even intermediate scrutiny. The City cannot meet its burden to show it will likely succeed on the merits of meeting intermediate scrutiny.

**IV. THE DISTRICT COURT DID NOT ERR IN DETERMINING THAT THE IRREPARABLE HARM SUFFERED BY PLAINTIFFS AND THE BALANCE OF EQUITIES WEIGH IN FAVOR OF GRANTING A PRELIMINARY INJUNCTION.**

Despite the City's arguments to the contrary, the City has not demonstrated a likelihood of success on the merits, for the reasons noted above. *See supra* §§ I-III. And the District Court did not err in determining that the "balance of harms and the public interest favor granting the requested preliminary injunction." (MD ECF 72, at 14.)

**A. Plaintiffs will suffer irreparable injury absent the injunction.**

Ordinances that violate the First Amendment are "per se irreparable injur[ies]." *LaCroix v. Town of Ft. Myers Beach, Fla.*, 38 F.4th 941, 954-55 (11th Cir. 2022) (citation omitted). "[E]ven a temporary infringement of First Amendment rights constitutes a serious and substantial injury." *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) (citation omitted); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Vigue v. Shoar*, Case No. 3:19-CV-186-J-32, 2019 WL 1993551, at *2 (M.D. Fla. May 6, 2019) ("when First Amendment freedoms are at stake, courts regularly find that plaintiffs have established that they will sustain irreparable injury.").

Plaintiffs will suffer irreparable harm if the injunction is not maintained. Plaintiffs have been repeatedly warned, arrested, jailed, and fined for the content of their speech, and will again suffer such harm if the injunction is lifted. So long as the Panhandling Ordinance is in effect, the City has unbridled discretion to prohibit the protected speech activity of Plaintiffs and other individuals. *See Univ. Books & Videos, Inc. v. Metro. Dade Cnty.*, 33 F. Supp. 2d 1364, 1373 (S.D. Fla. 1999) ("Because chilled speech cannot be compensated by monetary damages, an ongoing violation of the First Amendment constitutes irreparable injury.") (citing *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). The irreparable injury to Plaintiffs is clear and the District Court did not abuse its discretion in this conclusion.

### B. Threatened injury to Plaintiffs outweighs any damage to the City.

Courts must weigh the harm that Plaintiffs likely will sustain if the injunction were denied against that which the City will suffer if the injunction is issued. *Howard v. City of Jacksonville*, 109 F. Supp. 2d 1360, 1362 (M.D. Fla. 2000). Here, in contrast to the Plaintiffs' past and continuing harm that their ability to exercise their First Amendment right to request charity is being suppressed under threat of future arrest, the City will not suffer injury if it is prevented from enforcing illegal restrictions on First Amendment rights. In the interim, the City is free to enforce other state and local

laws. *See, e.g., Booher v. Marion Cnty.*, No. 5:07-cv-00282, 2007 WL 9684182, at *4 (M.D. Fla. Sept. 21, 2007); *see supra* § III(A). The District Court did not abuse its discretion in determining that harm to Plaintiffs outweighs harm to the City.

## C. A preliminary injunction is in the public interest.

A preliminary injunction would not adversely affect the public interest. The protection of constitutional rights is always in the public interest. *Lebron v. Wilkins*, 820 F. Supp. 2d 1273, 1292 (11th Cir. 2013) ("Perhaps no greater public interest exists than protecting a citizen's rights under the constitution") (internal citation omitted); *Howard*, 109 F. Supp. 2d at 1365 ("The public interest is served by the maintenance of First Amendment freedoms and could not possibly be served by the enforcement of an unconstitutional Ordinance."). Because the public has no interest in enforcing an unconstitutional speech restriction, an injunction against enforcement cannot "disserve" the public interest. *See Scott*, 612 F.3d at 1297; *see also Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 870 (11th Cir. 2020) (content-based regulations that directly penalize protected speech "meet the remaining requirements as a necessary legal consequence of our holding on the merits"). The District Court did not abuse its discretion in determining that a preliminary injunction is in the public interest.

## V. THE DISTRICT COURT PROPERLY DETERMINED AN EVIDENTIARY HEARING WAS NOT NECESSARY.

The City argues that the District Court abused its discretion when it granted the preliminary injunction without first holding an evidentiary hearing. (Initial Br., at 64-65.) "An evidentiary hearing is not always required before the issuance of a preliminary injunction." *All Care Nursing Service, Inc. v. Bethesda Memorial Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989). "[W]here material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998); *see also U.S. v. Lopez*, 466 Fed. App'x 829, 831-32 (11th Cir. 2012).

The City acknowledges that courts have discretion as to when to hold an evidentiary hearing on motions for preliminary injunctions. (Initial Br., at 66-67.) Despite that, the City offers twelve categories of fact that it claims warranted a hearing. (*Id.* at 64-66.) However, the facts that the City claims necessitated an evidentiary hearing were either not in dispute, not material to the issue at hand, or both.[14] Plaintiffs' motion did not involve circumstances that would require a hearing;

---

[14] One of the areas the City asserts required an evidentiary hearing is standing to challenge the prohibitions on panhandling after dark and "aggressive" panhandling. (Initial Br., at 66 n.16) As the District Court pointed out, the City did not raise this argument in its response to Plaintiffs' motion. (MD ECF 72, at 6 n.6.) Even if it had,

-43-

there were no "bitterly contested" facts, nor did the District Court need to make credibility determinations. *See McDonald's Corp.*, 147 F.3d at 1311-12 (discussing the circumstances under which an evidentiary hearing is necessary before ruling on a motion for preliminary injunction). The District Court did not opine on the credibility of the City's witnesses in its order. Nor did the City point to any facts in the Plaintiffs' declarations which it claimed were false. *Even if every single fact in the City's proffered affidavits were true*, it would have had no effect on the Court's opinion. Accordingly, an evidentiary hearing on the Plaintiffs' Motion was not necessary.

Further, without citing any legal support, the City also claims that the District Court abused its discretion in not granting oral argument. (Initial Br. at 70.) Courts have wide discretion whether to hold oral argument. *Silva v. Swift*, No. 4:19-cv-286, 2020 WL 12178206, at *2 (N.D. Fla. April 28, 2020); *see also* Fed. R. Civ. P. 78(b). The District Court received briefings from the parties on the need for an evidentiary hearing (MD ECF 45) and its decision to rule without argument was certainly not an abuse of discretion.

---

the City does no more than conclusorily dispute Plaintiffs' sworn declarations that they panhandle after dark and that the challenged provisions chill their speech.

## VI.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court find that the District Court did not abuse its discretion in concluding that the City is not likely to succeed on the merits of the case, and affirm the District Court's Order granting a preliminary injunction.

Respectfully submitted,

**Chelsea Dunn**, Fla. Bar No. 1013541
Chelsea.Dunn@southernlegal.org
**Jodi Siegel**, Fla. Bar No. 511617
Jodi.Siegel@southernlegal.org
**Daniel Marshall**, Fla. Bar No. 617210
Dan.Marshall@southernlegal.org
**Southern Legal Counsel, Inc.**
1229 NW 12th Avenue
Gainesville, FL 32601-4113
(352) 271-8890

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 10,481 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using WordPerfect 12 in 14 font Times New Roman.

_____
Attorneys for Plaintiffs/Appellants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that four copies of the foregoing brief were sent to the Clerk of Court, 56 Forsyth Street, N.W., Atlanta, GA 30303, one served on counsel for Defendant, and that the brief was electronically filed with the Court and served on all counsel of record via the CM/ECF system, on this 5th day of February 2024.

_____
Attorneys for Plaintiffs/Appellants