Appeal Case No.: 23-13119-H
_____

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

DENNIS SCOTT, CHAD DRIGGERS,
DOUGLAS WILLIS, and GEORGE ROWLAND,
Plaintiffs/Appellees,

v.

CITY OF DAYTONA BEACH, FLORIDA,
Defendant/Appellant.
_____

**On Appeal from the United States District Court,
Middle District of Florida, Orlando Division
6:22-cv-2192-WWB-RMN**
_____

**BRIEF OF *AMICI CURIAE* LAW PROFESSORS & INSTRUCTORS IN
SUPPORT OF PLAINTIFFS/APPELLEES**
_____

Mark Dorosin FL Bar #1041169
mark.dorosin@famu.edu
Florida A&M University College of Law
201 FAMU Law Lane
Orlando, FL 32801
407-254-4043
*Attorney for Amici Curiae*

*Scott, et al v. City of Daytona Beach, FL*
*Appeal Case No.: 32-131119-H*

## <u>CERTIFICATE OF INTERESTED PERSONS & CORPORATE</u>

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Court of Appeals Rule 26.1, the undersigned counsel of record certifies that the following listed persons may have an interest in the outcome of this case and were omitted from the Certificates of Interested Persons in briefs that were previously filed per 11th Cir. R. 26.1-2(b).

1. Abrams, Robert

2. Barnes, Cynthia

3. Broussard, Patricia

4. Brown, Jeff

5. Caussade-Garcia, Eunice

6. Cavazos, Ann Marie

7. Consalo, Kara

8. Crag-Chaderton, Kim

9. Dorosin, Mark

10. Imoukhuede, Areto

11. Jaen, Ulysses

12. Jones, Darryl

13. Keller, Deidré

14. Langston, Lundy

15. Ramkellawan, Cynthia

16. Reaves, Rhonda

17. Scully, Judith

18. Tal-Mason, Ali

There are nor parent corporations or publicly traded corporations that have an interest in the outcome of this case.


/s/ Mark Dorosin
Mark Dorosin
Counsel for *Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS & CORPORATE DISCLOSURE STATEMENT ........................................................C-1

TABLE OF CONTENTS.................................................................. i

TABLE OF CASES & AUTHORITIES ........................................... ii

INTERESTS OF AMICI CURIAE .....................................................1

STATEMENT OF THE ISSUE...........................................................2

SUMMARY OF ARGUMENT ...........................................................2

ARGUMENT .....................................................................................3

    I. U.S. Supreme Court & Content-Based Speech ...........................3

        A. The Solicitation of Funds is Protected Speech Under the First Amendment ...............................................................................4

        B. Content-Based Regulation of Speech is Presumptively Unconstitutional ..........................................................................5

        C. Content-Based Laws are Reviewed Under Strict Scrutiny, Regardless of the Motivation for the Legislation..................... 6

    II. The 11th Circuit and other Courts of Appeal...........................12

    III. US District Court Cases ........................................................20

CONCLUSION................................................................................25

CERTIFICATE OF COMPLIANCE................................................27

CERTIFICATE OF SERVICE .........................................................27

# TABLE OF CASES & AUTHORITIES

**Cases**

*Barr v. American Association of Political Consultants, Inc.,*
    591 U.S. ----, 140 S. Ct. 2335 (2020).  ........................................... 8, 9

*Bischoff v. Fla.*, 242 F. Supp. 2d 1226 (M.D. Fla. 2003) ....................................  24

*Booher v. Marion Cnty.*, No. 507CV00282WTHGRJ, 2007 WL 96841824
    (M.D. Fla. Sept. 21, 2007) ................................................................23

*Brown v. Entm't Merchs. Ass'n,* 564 U.S. 786 (2011) ..........................................  19

*Camp Hill Borough Repblican Ass'n v. Borough of Camp  Hill,*
    655 F. Supp. 3d 617 (M.D. Pa. 2023) …………………………………..  25

*Carey v. Brown,* 447 U.S. 455 (1980) ...................................................................... 6

*City of Austin, Texas v. Reagan National Advertising of Austin, LLC,*
    596 U.S. 61 (2022). ..................................................................... 9, 10

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) ...................  15

*Clark v. Community for Creative Non-Violence,* 468 U.S. 288 (1984)...................  5

*Consolidated Edison Co. of N. Y. v. Public Serv. Comm'n of N. Y.,*
    447 U.S. 530 (1980)......................................................................... 6

*Dimmitt v. City of Clearwater*, 985 F.2d 1565 (11th Cir. 1993) ..........................  13

*Erznoznik v. City of Jacksonville,* 422 U.S. 205 (1975) .......................................  19

*Garcia v. Stillman*, 661 F. Supp. 3d 1168 (S.D. Fla. 2023)...................................  11

*Harbourside Place, LLC v. Town of Jupiter,* Florida,
    958 F.3d 1308 (11ᵗʰ Cir. 2020) ....................................................... 15

*Heffron v. International Soc. for Krishna Consciousness, Inc.,*
    452 U.S. 640 (1981) ........................................................................ 10

*Henagan v. City of Lafayette, No. 6:21-CV-03946*
    2022 WL 4546721 (W.D. La. Sept. 27, 2022)……………………………….. 25

*Homeless Helping Homeless, Inc. v. City of Tampa, Fla.*, No. 8:15-CV-1219-
    T-23AAS, 2016 WL 4162882 (M.D. Fla. Aug. 5, 2016). ............................. 22

*Imperial Sovereign Ct. v. Knudsen*, No. CV 23-50-BU-BMM,
    2023 WL 6794043 (D. Mont. Oct. 13, 2023) ............................................. 11

*Indiana C.L. Found., Inc. v. Superintendent, Indiana State Police,*
    470 F. Supp. 3d. 888 (S.D. Ind. 2020) ……………………………………….. 25

*McCraw v. City of Oklahoma City*, 973 F.3d 1057 (2020).................................... 17

*Messina v. City of Fort Lauderdale, Fla.*,
    546 F. Supp. 3d 1227 (S.D. Fla. 2021) ................................................. 20, 21

*Messina v. City of Fort Lauderdale, Fla.*, No. 21-CV-60168,
    2024 WL 301574 (S.D. Fla. Jan. 26, 2024). ................................................. 21

*Otto v. City of Boca Raton, Florida,* 981 F.3d 854 (11th Cir. 2020)...................... 14

*Project Veritas v. Schmidt*, 72 F.4th 1043 (9th Cir. 2023) ................................... 11

*Reed v. Town of Gilbert,* 576 U.S. 155 (2015) .............................................. passim

*Republican Party of Minn. v. White,* 536 U.S. 756 (2002)…………………………..8

*Riley v. National Federation of Blind of N. C., Inc.,* 487 U.S. 781 (1988) ....... 4, 17

*Rodgers v. Bryant,* 942 F.3d 451 (8th Cir. 2019). ............................................. 18

*Scott et.al. v. City of Daytona Beacn, FL.,* No. 6:22-CV-2192-WWB-RMN,
    2023WL6324956 (M.D. Fla. Aug. 29, 2023) ...........................……………9, 11

*Smith v. City of Fort Lauderdale, Fla.*, 177 F.3d 954 (11th Cir. 1999) ............ 16, 17

*Solantic, LLC v. City of Neptune Beach,* 410 F.3d 1250 (11th Cir. 2005) ........ 12, 13

*Sorrell v. IMS Health Inc.,* 564 U.S. 552 (2011) ..................................................... 5

*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) ..................................................... 17

*Vigue v. Shoar,* 494 F. Supp. 3d 1204 (M.D. Fla. 2020) ...................................... 23

*Village of Schaumberg v. Citizens for a Better Environment,*
  444 U.S. 640 (1980).  ........................................................................................ 4

*Ward v Rock Against Racism,* 491 U.S. 781 (1989) .................................................. 5

**Statutes**

Daytona Beach, Fla., Code of Ordinances § 66-1(b)(3) ........................................... 9

# INTERESTS OF AMICI CURIAE

The law professors and instructors listed below are all committed to the rule of law and the fundamental individual freedoms and liberties enshrined in the U.S. Constitution, and particularly the right to freedom of speech guaranteed by the First Amendment, which is the keystone of democracy. Amici believe that the anti-panhandling ordinance adopted by the City of Daytona Beach is an unconstitutional encroachment on those rights and freedoms.

These professors and instructors have focused their professional careers on training new lawyers on the meaning, history, and application of constitutional principles, including how those principles are tested by contentious matters of public policy. Their work, teaching, and perspective is particularly critical when government actions adversely impact citizens that have been historically and continually marginalized by existing political, social, and economic policies and practices. Each has a strong interest in ensuring that the constitution is properly interpreted and fairly applied, including the protection of the individual rights and liberties guaranteed by the First Amendment from abridgement by the government. *Amici* support the Plaintiffs in this matter because they believe that the City of Daytona Beach anti-panhandling ordinance is an attempt to circumvent and undermine those inviolable constitutional rights and criminally punish the exercise of protected speech.

**AMICI:** Rhonda Reaves, Professor of Law; Patricia Broussard, Professor of Law, Lundy Langston, Professor of Law; Robert Abrams, Professor of Law; Darryl Jones, Professor of Law; Areto Imoukhuede, Professor of Law, Deidré Keller, Professor of Law; Ann Marie Cavazos, Professor of Law; Jeff Brown, Associate Professor of Law; Mark Dorosin, Associate Professor of Law; Kara Consalo, Assistant Professor of Law; Cynthia Ramkellawan, Assistant Professor of Law; Eunice Caussade-Garcia, Associate Instructor; Kim Crag-Chaderton, Instructor; Ali Tal-Mason, Instructor, Florida A&M University College of Law (all); Cynthia C. Barnes, Assistant Professor, Barry University School of Law; Ulysses Jaen, Professor of Law, Ave Maria School of Law; Judith Scully, Professor of Law, Stetson Law School.[1]

## STATEMENT OF THE ISSUE

Did the district court correctly enjoin Daytona Beach's anti-panhandling law as a content-based restriction that could not meet strict scrutiny review?

## SUMMARY OF ARGUMENT

The extensive jurisprudence regarding government regulation of panhandling demonstrates that such regulations are content-based restrictions whose enforcement necessarily depends on the particular message or expression of the speaker. Content-

---

[1] No party's counsel authored this brief in whole or in part. No person, other than amicus curiae's counsel, funded the preparation or submission of this brief.

based restrictions are subject to strict scrutiny and are only permitted if the government can show a compelling interest requires an encroachment on the First Amendment and that the proffered regulation is narrowly tailored to effectuate that interest. Because of the constitutional primacy of free speech in our democracy, which is an extraordinarily high burden and one the lower court correctly determined the city cannot meet. A detailed review of the precedents from the US Supreme Court, this court, and district courts in Florida support the ruling that the ordinance at issue is unconstitutional and demonstrate that it should be affirmed.[2]

## ARGUMENT

### I. U.S. Supreme Court & Content-Based Speech

The controlling precedents of the U.S. Supreme Court related to the constitutionality of local anti-solicitation regulations establish three foundational principles: 1) the solicitation of funds is speech protected by the First Amendment, 2) laws that that target speech because of the message communicated are presumptively unconstitutional, and 3) such content-based laws are subject to strict scrutiny review, even if the those laws have a content-neutral basis and no overt animus toward the targeted speech. These principles lay out the framework for this court's consideration of the Daytona Beach anti-panhandling ordinance.

---

[2] Florida A&M University College of Law students Jasmine G. Harmon and Grayson R. Lanza, the College's 2023-24 Racial Justice Fellows, provided invaluable assistance in researching and developing this brief.

## A. The Solicitation of Funds is Protected Speech Under the First Amendment

Following several decades of decisions related to the regulation of solicitation by local governments, the Supreme Court issued a definitive ruling in *Village of Schaumberg v. Citizens for a Better Environment,* 444 U.S. 640 (1980). Rejecting an ordinance prohibiting solicitation based on the financial expenditures of the soliciting organizations, the Court reviewed several of its previous holdings on the issue and concluded "Prior authorities . . . clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests . . . that are within the protection of the First Amendment." *Id.* at 632. It further emphasized this conclusion, noting, "[O]ur cases long have protected speech even though it is in the form of . . . a solicitation to pay or contribute money." *Id.* at 633 (internal citations omitted).

Recognizing that the village's regulation abridged constitutionally protected speech, the Court applied strict scrutiny and concluded that the proffered justifications for the restrictions were "inadequate" to support the ordinance and "could be sufficiently served by measures less destructive of First Amendment interests." *Id.* at 636. *See also, Riley v. National Federation of Blind of N. C., Inc.,* 487 U.S. 781, 789 (1988) ("Our prior cases teach that the solicitation of charitable contributions is protected speech.").

## B. Content-Based Regulation of Speech is Presumptively Unconstitutional

Given the Court's recognition that the solicitation of money is speech protected by the First Amendment, the initial question in evaluating the constitutionality of an anti-solicitation regulation is whether it targets speech because of its communicative content; that is, whether the law's application is based on the particular message of the speaker. If a law cannot be "justified with reference to the content of the regulated speech," or was adopted "because of a disagreement with the message it conveys," it must be subject to strict scrutiny. *Ward v Rock Against Racism,* 491 U.S. 781, 791 (1989); *see also Sorrell v. IMS Health Inc.,* 564 U.S. 552, 563 (2011) (striking down Vermont legislation that "On its face . . . enacts content-and speaker-based restrictions."). Additionally, the Court has repeatedly recognized that even though reasonable time, place, or manner restrictions on protected speech may be enacted, such limitations are only permissible if they are made "without reference to the content of the regulated speech." *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293 (1984).

The Court has also made clear that even arguably "viewpoint neutral" regulations will nonetheless be considered content based (and subject to strict scrutiny) if those regulations attempt to restrict an entire category or specific subject of speech. "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public

discussion of an entire topic." *Consolidated Edison Co. of N. Y. v. Public Serv. Comm'n of N. Y.*, 447 U.S. 530, 537 (1980) (state regulation prohibiting inserts in public utility bills that discuss "political matters" was an unconstitutional content-based restriction, despite its viewpoint neutrality). *See also Carey v. Brown,* 447 U.S. 455, 464 (1980) (rejected a ban on picketing in residential neighborhoods that exempted labor picketing, explaining that the labor-nonlabor distinction, even if viewpoint neutral, was unconstitutional because "it is the content of the speech that determines whether it is within or without the statute's blunt prohibition.").

**C.   Content-Based Laws are Reviewed Under Strict Scrutiny, Regardless of the Motivation for the Legislation**

The Court definitively reaffirmed and clarified these precedents when evaluating the constitutionality of the municipal sign ordinance in *Reed v. Town of Gilbert,* 576 U.S. 155 (2015), which imposed various size, location, and durational limitations on different categories of signs ("ideological," "political," and "temporary directional"). The Court of Appeals concluded the legislation was constitutional because the justification for the restrictions was not related to the language or content of the sign. The Supreme Court reversed that decision, noting that the rationale for the ordinance is irrelevant if the statute is content based. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* at 165 (internal quotation omitted).

The town asserted that the law could not be content based because it did not favor or punish any particular viewpoint or idea, but rather was facially neutral with regard to each of the three categories created. The Court was unpersuaded. It held the sign ordinance was content based on its face because it "singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter." *Id.* at 169. That the ordinance gave more favorable terms to signs that contained ideological messages than to those related to political candidates, and then the most onerous restrictions to temporary signs, "is a paradigmatic example of content-based discrimination." *Id.*

Having determined that the sign ordinance was facially content based, the Court applied strict scrutiny analysis to determine whether the restrictions imposed were narrowly tailored to serve a compelling government interest. The town claimed that its interest was to preserve the visual aesthetics of the community and promote traffic safety. Explaining that the ordinance did nothing to address the impacts of ideological or political signs on those proffered interests, the Court found the ordinance underinclusive and not narrowly tailored. "A law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Id.* at 172 (quoting *Republican Party of Minn. v. White,* 536 U.S. 756, 780 (2002)).

The Court built on the core holding of *Reed* in *Barr v. American Association of Political Consultants, Inc.,* 591 U.S. ----, 140 S. Ct. 2335 (2020). That case considered the constitutionality of an exception for calls related to the collection of debts owed the U.S. government from a statute banning automated "robocalls" to cell phones. Like *Reed*, the Court began with first principles: that the First Amendment prohibits the government from limiting speech because of its message or content; that although reasonable time, place and manner regulations may be imposed, if those restrictions have the effect of discriminating based on the content of the speech at issue, they are unconstitutional; and finally, that content based laws are subject to strict scrutiny. *Id.* at 2346.

In assessing the constitutionality of the exception for government debt-collection calls, the Court rejected the government's arguments that the law distinguished between speakers or the type of activity those speakers were engaged in, rather than the content of the speech. The Court, again cited *Reed,* began with the question of whether the law contains facial distinctions based on the message of the speech or "single out specific subject matter for differential treatment." *Id.* (quoting *Reed,* 576 U.S. at 169). The opinion then summarizes its analysis succinctly.

> A robocall that says, "Please pay your government debt" is legal. A robocall that says, "Please donate to our political campaign" is illegal. That is about as content-based as it gets. Because the law favors speech made for collecting government debt over political and other speech, the law is a content-based restriction on speech.

*Id.* Given the finding that the exception was a content-based regulation, strict scrutiny applied. The government conceded that it could not meet that standard, and that portion of the statute was declared unconstitutional. *Id.* at 2347.

The Court's rationale and conclusion in *Barr* is directly on point here. The Daytona Beach ordinance expressly states that it is illegal "to beg or make any demand or request made in person for an immediate donation of money or some other article of value from another person for the use of one's self or others." Daytona Beach, Fla., Code of Ordinances § 66-1(b)(3). That means that a person holding a sign that says "Please give me money" has violated the ordinance, but a person standing next to them with a sign that says "Please don't give her any money" has not. There is no other way to characterize this than a facially content-based restriction, to which strict scrutiny must be applied. The district court's conclusion, that "the Challenged Provisions are content-based because they apply exclusively to solicitations or requests for charitable donations" should be affirmed. *Scott v. City of Daytona Beach Fla*., No. 6:22-CV-2192-WWB-RMN, 2023 WL 6324956 *4 (M.D. Fla. Aug. 29, 2023).

The Supreme Court most recently reaffirmed its holding in *Reed* in *City of Austin, Texas v. Reagan National Advertising of Austin, LLC,* 596 U.S. 61 (2022). While concluding that a regulation distinguishing on-premise and off-premise billboards was a content-neutral, reasonable time, place, or manner restriction, the

Court repeatedly quoted from its 2015 decision and expressly stated that its holding was consistent with the precedent it established at that time. *Id.* at 76. *Reed,* therefore, remains the controlling standard for "recognizing examples of topic or subject-matter discrimination as content-based." *Id.*

The City erroneously claims that *Austin* somehow exempts its anti-panhandling ordinance from the content-based assessment established by *Reed* and *Barr.* Justice Sotomayor's majority opinion states that while past decisions have permitted some limitations on soliciting, such restrictions can only be constitutional "so long as they do not discriminate based on topic, subject matter, or viewpoint." *Id.* at 72. As noted above, the city's ordinance facially treats speech on one subject matter—asking for money—different than any other expressive content or message.

Additionally, the opinion's primary example of a constitutional restriction on soliciting funds, *Heffron v. International Soc. for Krishna Consciousness, Inc.,* 452 U.S. 640 (1981), is inapposite to this case for several reasons. Most significantly, *Heffron* dealt with a limited public forum (which gives the government greater leeway in regulating speech), while the ordinance in this case attempts to regulate speech on every sidewalk and street of the city-- the quintessential and most fundamental public forum in our society. Furthermore, as the lower court recognized, unlike *Heffron's* restriction on all types of solicitation (e.g., asking for anything), the Daytona Beach ordinance treats solicitation only as a category of

panhandling, and therefore it applies only to the immediate request for money. *Scott,* No. 6:22-CV-2192-WWB-RMN, *4. In so doing, it facially discriminates based solely on one topic, and therefore must be subject to strict scrutiny. Lastly, even given these distinguishing elements, it is a colorable question as to whether *Heffron* is still good law after *Reed.*

Other cases that have considered *Austin* reach a similar conclusion. A Florida federal court considering a restriction on lobbying by public officials rejected the assertion that *Austin* authorized such a limitation.

> Applying *City of Austin's* logic, it could be argued that examining a public officer's speech does not necessarily render the Lobbying Restrictions content-based, if the sole purpose of examining his speech is to determine whether he is engaging in lobbying. . . . But *City of Austin* provides no support for the proposition that a statute that "single[s] out [a] topic or subject matter for differential treatment" can be anything other than content-based.

*Garcia v. Stillman*, 661 F. Supp. 3d 1168, 1182 (S.D. Fla. 2023). The court enjoined the enforcement of the statute. *See also, Project Veritas v. Schmidt*, 72 F.4th 1043, 1056 (9th Cir. 2023) (recognizing that *Austin* held that its "exception for location-based rules does not affect the Court's longstanding holding that regulations that discriminate based on the topic discussed or the idea or message expressed ... are content based." (*internal citation omitted*)); *Imperial Sovereign Ct. v. Knudsen*, No. CV 23-50-BU-BMM, 2023 WL 6794043, *10 (D. Mont. Oct. 13, 2023) (rejecting the state's claim that its anti-drag law was content-neutral because it was designed to address the secondary effects of sexually expressive conduct on minors, and citing

*Austin* in concluding that the law was not a reasonable time, place, or manner restriction, but focused "on the communicative content of the speakers" and "imposes a content-based restriction.").

Applying these foundational free speech principles to the Daytona Beach ordinance establishes that the solicitation of funds it attempts to regulate is protected by the First Amendment, and because it attempts to prohibit speech solely because of its content, it is presumptively unconstitutional. Further, the city's claimed benign intent or motive in adopting the ordinance cannot circumvent the application of strict scrutiny review, which the city cannot meet because the ordinance is not narrowly tailored to serve a compelling government interest.

**II. The 11th Circuit and other Courts of Appeal**

The circuit courts' First Amendment cases have built and elaborated on the foundational jurisprudence from the U.S. Supreme Court described above. These cases also provide more direct guidance on the application of the broader free speech jurisprudence to the specific issues related to the regulation of panhandling.

10 years before *Reed,* this court considered the First Amendment implications of a municipal sign ordinance in *Solantic, LLC v. City of Neptune Beach,* 410 F.3d 1250 (11th Cir. 2005). While the ordinance purportedly applied to and regulated all signs erected within the city, it explicitly exempted "religious symbols, commemorative plaques of recognized historical societies and

organizations, signs carrying news items or telling the time or temperature, signs erected in the discharge of any governmental function, and temporary political campaign signs." *Id.* at 1260. This court concluded that the exemption was a content-based regulation on its face and applied strict scrutiny. The city argued the sign ordinance "pertain[ed] to the safety and aesthetic harms that signs may cause," and identified the need for "effective business identification, advertising and communication." *Id.* at 1254-55.

The court disagreed. Relying on some of the pre-*Reed* Supreme Court opinions cited *supra,* as well as the precedent it established in *Dimmitt v. City of Clearwater*, 985 F.2d 1565 (11th Cir. 1993) (invalidating a city ordinance that exempted government flags from a permitting scheme for all other flag displays), the court concluded that "because some types of signs are extensively regulated while others are exempt from regulation based on the nature of the messages they seek to convey, the sign code is undeniably a content-based restriction on speech." *Solantic*, at 1266. Further, the city's proffered justification for the ordinance was not narrowly tailored, "offering no reason for applying its requirements to some types of signs but not others." *Id.* at 1267.

Similarly, in *Otto v. City of Boca Raton, Florida,* 981 F.3d 854 (11th Cir. 2020), city and county ordinances prohibited licensed marriage and family therapists from giving therapy to minors with intent to change their sexual orientation and/or

gender identity. The court quickly concluded that the regulations were not only content-based ("We cannot see how the regulations here can be applied without considering the content of the banned speech"), but also viewpoint based (limiting "a category of people—therapists—from communicating a particular message."). *Id.* at 863. The city and county argued that they had a compelling interest in protecting the psychological and physical well-being of minors from so-called "conversion therapy" practices *Id.* at 868. The court agreed that this was a strong and legitimate interest. *Id.* But the means by which the city and county took to achieve that interest, restricting the content of the therapists' speech, was based on tenuous evidentiary claims and therefore not sufficiently narrowly tailored to "overcome the strong presumption against content-based limitations on speech. Permitting uncertain evidence to satisfy strict scrutiny would blur the lines that separate it from lesser tiers of scrutiny—that is, intermediate scrutiny and rational basis review." *Id.* at 869. The city's legislative record in the case at bar is similarly insufficient to meet the rigors of strict scrutiny review.

When the Town of Jupiter, Florida adopted an ordinance that limited the hours any person could use outdoor sound amplification equipment at approved venues, the developers of a mixed-use property that featured live music challenged the regulation as content-based encroachment on free speech. *Harbourside Place, LLC v. Town of Jupiter,* Florida, 958 F.3d 1308 (11th Cir. 2020). The town either required

a permit for all outdoor live musical performances on non-residential property or approval for an outdoor venue. *Id.* at 1313. Harbourside asserted these restrictions were content-based and in violation of the First Amendment. *Id.* at 1316. While music is recognized as the free exercise of speech, the Supreme Court explained that "a prohibition against the use of sound ... emitting 'loud and raucous' noise in residential neighborhoods is permissible if it applies equally to music, political speech, and advertising." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 428-29 (1993).

Applying the *Reed* framework to determine whether the ordinance created a content-based restriction, the court noted that because the ordinance applied to *all* outdoor amplification of sound and *all* outdoor facilities regardless of the type of sound amplified, the ordinance was content-neutral. "We see nothing in these provisions that differentiates treatment based on the content . . . or the message or viewpoint of the speaker." *Harbourside,* 958 F.3d at 1317. The court rejected the plaintiff's claim that differentiation between live and recorded music was inherently content-based, concluding that the restriction did not turn on the subject matter, topic, message, or viewpoint of the speech or sound. *Id.* This is the critical in distinguishing element from the Daytona ordinance at issue here, which on its face applies to one message only—the immediate request for money.

*Smith v. City of Fort Lauderdale, Fla*., 177 F.3d 954 (11th Cir. 1999), which upheld a prohibition on panhandling on a five-mile strip of the town's beach, provides little support for the Daytona Beach ordinance. Most significantly, the plaintiffs bringing that challenge inexplicably stipulated that the Fort Lauderdale regulation was content-neutral, despite its facially content-based elements. *Id.* at 956. That concession proved fatal to their claims, as it shifted the context of the court's review from strict to intermediate scrutiny. *Id.* Under that more relaxed standard, the court concluded that although begging is speech entitled to First Amendment protection, the city's interest in "providing [a] safe, pleasant environment, and eliminating nuisance activity…" was a significant government interest, and the regulation was narrowly tailored to meet that interest. *Id.*  Specifically— and again in contrast to the Daytona Beach ordinance— the Ft. Lauderdale rule applied only to a limited location on the beach, rather than an entire city. In fact, the court expressly highlighted that fact the restriction was "materially mitigated by the allowance of begging in streets, on sidewalks, and in many other public fora throughout the City." *Id.* at 957. The Daytona Beach ordinance prohibits panhandling throughout the *entire* city, thereby foreclosing every public forum in the municipality, with no alternative avenue to engage in this unquestionably constitutional free speech.

Other Circuit Courts have similarly recognized that regulations prohibiting panhandling are content-based restrictions requiring  strict scrutiny review. In 2015,

Oklahoma City expanded its anti-panhandling ordinance to prohibit "standing, sitting, or staying on any portion of a median either less than thirty feet wide or located less than two hundred feet from an intersection." *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1062 (2020). Although city leaders admitted that the original ordinance was intended to ban panhandling, they claimed the amended ordinance was designed to address public safety, noting that panhandling was still permitted on the city's sidewalks. *Id.* The ordinance was challenged on First Amendment grounds, and the district court determined that the regulation was a reasonable time, place, or manner restriction. *Id. a*t 1063.

The appellate court began its analysis by reiterating that panhandling is a form of free speech protected by the First Amendment. *Id.* at 1066 (citing *Riley* 487 U.S. at 789 (1988) (solicitation of charitable contributions is protected speech); *Speet v. Schuette*, 726 F.3d 867, 878 (6th Cir. 2013) ("begging, or the soliciting of alms, is a form of solicitation that the First Amendment protects"); *Smith*, 177 F.3d at 956 (11th Cir. 1999) ("Like other charitable solicitation, begging is speech entitled to First Amendment protection.")). Turning to the ordinance's specific focus on road medians, the court determined that they were a public forum, given their traditional and historical use by the public for assembly and expressive activity. *Id.* at 1068-69. The court rejected the city's argument that it never intended road medians to be a public forum or that the ordinance somehow changed that status. "[T]he government

may not transform the character of the property by the expedient of including it within the statutory definition of what might be considered a non-public forum parcel of property." *Id.* at 1070. The court noted that time, place, and manner restrictions *could* be imposed in a public forum, but only if "the restrictions are justified without reference to the content of the regulated speech." *Id.*

The plaintiffs asserted that the ordinance was content-based and that strict scrutiny applied, but the court concluded that the regulation could not even survive intermediate scrutiny, because "the harms or the remedial effects of the government's restrictions are supported only by speculation or conjecture," and "the regulation burdens substantially more speech than is necessary to further the government's legitimate interests." *Id.* at 1071.

The 8th Circuit reached the same conclusion four years later, striking down an Arkansas anti-loitering law that banned "begging in a manner that is harassing, causes alarm, or impedes traffic." *Rodgers v. Bryant,* 942 F.3d 451 (8th Cir. 2019). Two individuals arrested under a prior version of the law secured a preliminary injunction barring its enforcement on First Amendment grounds, and the state appealed. *Id. a*t 453. The circuit court, quoting *Reed,* determined that the law was content-based because it regulates speech based on "the topic discussed or the idea or message expressed." *Id.* at 456 (internal citations omitted). The court also wrote however, that "just because speech is protected does not mean that it must go

unregulated. *Id.* The question then was whether the law was narrowly tailored to serve the state's claimed interest in motor vehicle safety and preventing aggressive conduct and traffic hazards. It was not. *Id.* at 457. The Arkansas law was only directed at panhandling and not at any other types of solicitation (political, commercial, religious) that were just as likely to impact the government's proffered interests. *Id.* Arkansas offered no legitimate justification for the law to discriminate and single out charitable types of solicitation against others, and thus the court found it was underinclusive, not narrowly tailored, and unconstitutional. *Id.; Brown v. Entm't Merchs. Ass'n,* 564 U.S. 786, 801-02 (2011) (a law restricting the sale of violent video games to minors was "wildly underinclusive" because the state "declined to restrict" other forms of media that could be equally dangerous to children); *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 215 (1975) ("regulation of speech cannot discriminate on the basis of content [without a] clear[s] reason[s] for [such] distinctions.").

The same analysis should be applied here to affirm the ruling below that the Daytona Beach ordinance is unconstitutional. The city's claim that its regulation is a reasonable time, place, and manner regulation is undercut by the fact that the anti-panhandling ordinance is facially content-based. Additionally, the city has utterly failed to demonstrate that the ordinance is narrowly tailored. By limiting its application exclusively to the immediate request for money while ignoring every

other form of speech, the ordinance is underinclusive regarding the purported interests or harms identified by the city and is therefore unconstitutional.

### III. US District Court Cases

The City of Daytona Beach is not the first municipality in Florida to pass an ordinance attempting to ban panhandling. Fort Lauderdale, Tampa, and Marion County have similarly tried to restrict panhandling through content-based restrictions on speech, and courts have rejected each of those ordinances. The Daytona regulation was modeled on these examples and suffers similarly fatal free speech defects, requiring that the district court decision be affirmed.

*Messina v. City of Fort Lauderdale, Fla.*, 546 F. Supp. 3d 1227 (S.D. Fla. 2021) involved a challenge to Fort Lauderdale's ordinance that banned panhandling in certain parts of the city and "aggressive panhandling" (in a fashion copied by Daytona Beach). The plaintiff argued that the ordinance "facially" violated the First Amendment. *Id* at 1233. Fort Lauderdale claimed the law "proscribes sign-holding only on private property, and not on public rights-of-way. . . [and] that the hand-to-hand clause in the Right-of-Way Ordinance was a distinct, content-neutral prohibition, which could be isolated from the other proscriptions and evaluated separately." *Id.* at 1234–35. The court analyzed the ordinance under *Reed*, stating that "[if] the law limits speech based on its communicative content—then it is subject to strict scrutiny." *Id* at 1237. Assessing the express facial language of the

restriction, the court found that "the law limits in-person, vocal solicitations for money or things of value. But it *doesn't* touch other topics of discussion." *Id* at 1240. Notably, in rejecting the ordinance as unconstitutional, the court recognized the very high burden cities have to meet to defend these regulations in the wake of *Reed.* "The ordinances at issue in the post-2015 panhandling cases . . . bear striking similarities to the Panhandling Ordinance we have here, and our sister courts have unanimously enjoined those laws precisely because they were content based." *Id.* at 1242. Notably, Daytona Beach's definition of "Panhandling" mirrors the definition in the Fort Lauderdale ordinance that has now been permanently enjoined. *Messina v. City of Fort Lauderdale, Fla.*, No. 21-CV-60168, 2024 WL 301574 (S.D. Fla. Jan. 26, 2024).[3]

---

[3] The court in *Messina* also rejected the city's proffered legislative findings in support of the ordinance as not credible or sufficient to meet the narrow tailoring requirement. As to  the city's claim that those findings were entitled to judicial deference, the court invoked "the Supreme Court's admonition that [d]eference to a legislative finding cannot limit judicial inquiry when First Amendment rights are at stake. . . . whatever deference is due legislative findings would not foreclose our independent judgment of the facts bearing on an issue of constitutional law." *Id.* at *25 (internal citations omitted).[4] Recent decisions from other U.S. District Courts have similarly struck down anti-panhandling regulations. *See, e.g., Henagan v. City of Lafayette*, No. 6:21-CV-03946, 2022 WL 4546721 *3 (W.D. La. Sept. 27, 2022) (even after *City of Austin,* solicitation restrictions that discriminate based on topic, subject matter, or viewpoint are subjected to strict scrutiny); *Indiana C.L. Union Found., Inc. v. Superintendent, Indiana State Police*, 470 F. Supp. 3d 888, 903 (S.D. Ind. 2020) (statute's "plain text establishes its content-based nature, because it

In Tampa, a non-profit organization, Homeless Helping Homeless, Inc. (HHH), challenged a municipal ordinance that prohibited the "solicitation of donations or payment." *Homeless Helping Homeless, Inc. v. City of Tampa, Fla.*, No. 8:15-CV-1219-T-23AAS, 2016 WL 4162882, at *2 (M.D. Fla. Aug. 5, 2016). HHH claimed that the regulation violated its First Amendment rights because it was a "content-based regulation of speech that cannot withstand strict scrutiny under the First Amendment." *Id*. The court agreed, holding that the ordinance

> applies to speech depend[ing] entirely on the expressed message (i.e., a solicitation for "donations or payment")... [and] imposes no penalty if a speaker in a public park in downtown Tampa or on a sidewalk in Ybor City asks a passer-by about a political issue or offers a passer-by a brochure about a church or about a show at a carnival.

*Id*. at *4. The City argued that it was the ordinance was not content based, and pointed out that the legislative debates around the ordinance demonstrated its concern for the homeless and how best to assist them, and that organizations that serve that population were included in those discussions. *Id* at *5. The court was unpersuaded.

---

defines the prohibited conduct by referring to the content of the speech – a request for an immediate donation of money or something else of value – and by referring to the function of the speech – requesting the donation or something else of value," and noting the failure to present evidence to show that panhandling threatened the government's stated interest); *Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*, 665 F. Supp. 3d 617, 629 (M.D. Pa. 2023) (rejecting city's claim that its "extensive legislative process" before adopting ordinance demonstrated that it was content-neutral).

the Tampa City Council's solicitude toward the interests of the homeless and the City Council's amiable reception of advocates for the homeless are, especially after *Reed*, unresponsive to a constitutional attack on Section 14-46(b) as impermissibly content-based. To the extent that the City argues that Section 14-46(b) is content-neutral because the City actively accommodates the homeless, the argument fails.

*Id.* The court found that Tampa's ordinance was a content-based restriction on speech. The city could offer no compelling interest to support it, and it was declared unconstitutional and permanently enjoined. *Id.*

In 2006, Marion County banned panhandling without a license. *Booher v. Marion Cnty.*, No. 507CV00282WTHGRJ, 2007 WL 96841824 *1 (M.D. Fla. Sept. 21, 2007). The plaintiff, a homeless individual, challenged the ordinance as a facial violation of the First Amendment. *Id.* Notably, *Booher* predates *Reed;* however, the court still employed a content-based speech restriction analysis. *Id.* at *3. Marion County attempted to justify the ordinance as being based "on the grounds that it promotes traffic safety." *Id.* The court explained that by its express language, the ordinance

pertains only to those individuals soliciting charitable donations for their own benefit (as opposed to the benefit of others... [s]uch distinctions appear to have no bearing whatsoever on street/highway safety. . . . Certainly, traffic concerns caused by charitable organizations are not less problematic than traffic concerns caused by a homeless person who is "begging."

*Id*. The court also noted that the purported concerns about traffic flow, were "adequately addressed by existing laws," *Id*. at *4. *See also, Vigue v. Shoar,* 494 F. Supp. 3d 1204, 1229 (M.D. Fla. 2020) (striking down restrictions on panhandling in

roadway medians, "The Legislature may legislate on these topics so long as it strikes the careful balance between upholding First Amendment rights and ensuring traffic safety. Unfortunately, neither [ordinance here] meet this test . . . .Florida's legitimate interest in road safety can be better served by measures less intrusive than a direct prohibition on solicitation." (internal citations omitted)).

The Daytona Beach anti-panhandling ordinance fares no better constitutionally than the regulations adopted by Fort Lauderdale, Tampa, or Marion County. Like those, Daytona Beach's ordinance is a facially content-based regulation of speech, and therefore is presumptively unconstitutional. To overcome this presumption the city has the burden to prove it has a compelling government interest and that its content-based restrictions are narrowly tailored to achieve that interest. *Messina* recognized that this is an extraordinarily high burden. And even if the court agrees that that Daytona's stated intent to protect the health, safety, and welfare of its residents is a compelling interest, its ordinance—like Marion County's—is fatally underinclusive. Finally, both *Messina* and *Tampa* demonstrate that the city's assertion of benign intent towards panhandlers or demand for deference to its carefully calibrated legislative findings are insufficient to remedy the ordinance's constitutional infirmities. Were this Court to find Daytona's anti-panhandling ordinance unconstitutional, as the *Marion County* court recognized, existing laws regarding assault, battery, or illegally obstructing the flow of traffic

would effectively (and constitutionally) address the city's purported concerns. *See Bischoff v. Fla.*, 242 F. Supp. 2d 1226 (M.D. Fla. 2003) (while protecting a city's citizens and visitors' health, safety, and welfare is a significant government interest, content-based free-speech restrictions are typically found to be unconstitutionally overbroad.).[4]

## CONCLUSION

The Daytona Beach anti-panhandling ordinance is a facially content-based limitation on free speech protected by the First Amendment. It is therefore presumptively unconstitutional, and subject to strict scrutiny review. The city failed to meet its burden pursuant to that review to prove that the law is narrowly tailored to serve a compelling government interest. The District Court order granting the

---

[4] Recent decisions from other U.S. District Courts have similarly struck down anti-panhandling regulations. *See, e.g., Henagan v. City of Lafayette*, No. 6:21-CV-03946, 2022 WL 4546721 *3 (W.D. La. Sept. 27, 2022) (even after *City of Austin*, solicitation restrictions that discriminate based on topic, subject matter, or viewpoint are subjected to strict scrutiny); *Indiana C.L. Union Found., Inc. v. Superintendent, Indiana State Police*, 470 F. Supp. 3d 888, 903 (S.D. Ind. 2020) (statute's "plain text establishes its content-based nature, because it defines the prohibited conduct by referring to the content of the speech – a request for an immediate donation of money or something else of value – and by referring to the function of the speech – requesting the donation or something else of value," and noting the failure to present evidence to show that panhandling threatened the government's stated interest); *Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*, 665 F. Supp. 3d 617, 629 (M.D. Pa. 2023) (rejecting city's claim that its "extensive legislative process" before adopting ordinance demonstrated that it was content-neutral).

preliminary injunction against the enforcement of the ordinance should be affirmed.

Respectfully submitted this the 12th day of February, 2024.

/s/ Mark Dorosin
Mark Dorosin Fl. Bar # 1041169
mark.dorosin@famu.edu
Florida A&M University
  College of Law
201 FAMU Law Lane
Orlando, FL 32801
407-254-4043

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5), 32(a)(7)(B)(i), and 11 Cir. R. 32-4 because it contains 5,981 words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. Rule 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) and 11 Cir. R. 32-3 because it has been prepared in a proportionally spaced typeface using Microsoft Word (14-point Times New Roman) and is double-spaced.

/s/ Mark Dorosin
Mark Dorosin
Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit on February 12, 2024, by using the appellate CM/ECF system, and service was accomplished on all counsel of record by the appellate CM/ECF system.

/s/ Mark Dorosin
Mark Dorosin
Counsel for *Amici Curiae*